COMMONWEALTH *vs.* MELQUIDIA E. CRUZ
(and nine companion cases[1]).

Plymouth. January 3, 2000. - March 2, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Search and Seizure,* Probable cause, Affidavit, Warrant. *Probable Cause.*
*Constitutional Law,* Search and seizure, Probable cause. *Joint Enterprise.*
*Evidence,* Joint enterprise, Hearsay. *Controlled Substances.*

An affidavit in support of an application for a search warrant provided a
substantial basis for the conclusion that named persons were trafficking in
cocaine and that evidence relating to the distribution of cocaine would be
found at the named premises [842-843]; further, the information in the af-
fidavit was not demonstrated to be stale [843].

Where probable cause existed at the time a search warrant was issued, it was
not an anticipatory warrant. [843-844]

At the trial of four defendants for trafficking in cocaine, there was no error in
the judge's admitting in evidence extrajudicial statements of one defendant
as statements of a joint venturer, where there was sufficient other evidence
of the existence of a joint criminal venture before the statements were
admitted. [844-846]

At the trial of a criminal case, there was no error in the judge's failure to
instruct on lesser included offenses, where the evidence did not warrant it.
[846]

INDICTMENTS found and returned in the Superior Court Depart-
ment, eight on April 19, 1995, and two on December 11, 1995,
respectively.

[1]Six against Jaime Gonzalez, two against Berto Solano, and one against
Carlos A. Villar.

Cruz, Solano (on two indictments), and Gonzalez (on two indictments)
were convicted of trafficking in cocaine with a net weight of one hundred
grams or more but less than 200 grams pursuant to G. L. c. 94C, § 32E (*b*)
(3). Gonzalez and Villar were convicted of trafficking in cocaine with a net
weight of 200 grams or more pursuant to G. L. c. 94C, § 32E (*b*) (4). Gonza-
lez also was convicted on two indictments charging trafficking in cocaine with
a net amount of between fourteen and twenty-eight grams and unlawful
distribution of cocaine.

Pretrial motions to suppress evidence were heard by *Suzanne V. DelVecchio*, J., and the cases were tried before *Patrick F. Brady*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul M. Koziell* for Melquidia E. Cruz.

*Frank H. Spillane* for Carlos A. Villar.

*Elizabeth Doherty* for Berto Solano.

*Mary E. Mullaney*, Assistant District Attorney, for the Commonwealth.

*Richard J. Shea*, for Jaime Gonzalez, submitted a brief.

SPINA, J. Following a joint trial, a jury convicted the defendants, Melquidia E. Cruz, Jaime Gonzalez, Berto Solano, and Carlos A. Villar, of trafficking in cocaine. On appeal, Cruz, Gonzalez, and Villar claim that the affidavit offered in support of the application for the search warrant for Cruz's apartment failed to establish probable cause and failed to meet the requirements for an anticipatory warrant. Additionally, Villar and Solano claim that the trial judge erred in admitting hearsay statements by Gonzalez because there was insufficient nonhearsay evidence to establish their participation in a criminal joint venture. Solano also claims error in the denial of his motion for a required finding of not guilty, and the refusal to instruct the jury on the lesser included offense of simple possession of cocaine. We transferred the defendants' appeals here on our own motion. We reject their claims. We affirm the convictions.

1. *Background.* On March 31, 1995, Cruz, Gonzalez, and Villar were arrested by police in Cruz's apartment at 15 Eagle Avenue, apartment no. 5, in Brockton. Just prior to the arrests, police had executed a warrant to search Cruz's apartment, the culmination of an undercover investigation into drug trafficking activity operating from her apartment. At the time police entered the premises to execute the warrant, they saw Villar and Gonzalez in the kitchenette. Villar was holding a sifter in his hand. On the kitchen counter was a quantity of cocaine, later determined to be 173.64 grams. In the freezer, the police found a plate of cocaine, determined to be 111.55 grams. In the kitchen cabinet the police found a bag of cocaine determined to be 0.90 grams. Various paraphernalia used in the preparation and distribution of cocaine, such as Inositol powder, baggies, and scales, were found in the kitchenette. Villar and Gonzalez were wearing pagers.

Cruz was found in another room of the apartment, where police found a bag containing what was determined to be 13.17 grams of cocaine in a pair of baby's pajamas. In total, police recovered nearly 300 grams of cocaine from the apartment. Solano was arrested three days later on April 3, 1995. During a search of his vehicle pursuant to a warrant, police discovered an electronically controlled secret compartment which could be used for hiding and transporting cocaine.

2. *Motion to suppress.* Cruz, Gonzalez, and Villar argue that the affidavit supporting the search warrant for Cruz's apartment executed on March 31, 1995, failed to establish probable cause because the information was stale. See G. L. c. 276, § 1 (warrants may be issued only on showing of probable cause). Additionally, they contend that the warrant was an anticipatory search warrant which was executed without appropriate safeguards, see *Commonwealth* v. *Gauthier*, 425 Mass. 37, 42, 43-45 (1997); *Commonwealth* v. *Soares*, 384 Mass. 149, 155 (1981), thus entitling them to a new trial. These arguments are without merit.

To establish probable cause to search, "[a]n affidavit must contain enough information for an issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). Probable cause demands more than mere suspicion, but less than the quantum required for a conviction. See *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982). The affidavit should be read in an ordinary, commonsense manner, without hypertechnical analysis. See *United States* v. *Ventresca*, 380 U.S. 102, 109 (1965); *Commonwealth* v. *Blake*, 413 Mass. 823, 827 (1992).

We summarize the information in the affidavit. In late February, 1995, State police Trooper Anthony E. Thomas, a narcotics investigator assigned to the Plymouth County district attorney's office, received information from a confidential source regarding the distribution of cocaine in Brockton. The informant told Thomas that cocaine could be purchased from either of two named men by calling a particular Brockton telephone number and placing an order. The source provided the telephone number, identified the locations where the purchases occurred, and provided the registration number of the vehicle driven by one of

the men, as well as physical descriptions of them. The telephone number was a nonpublished service listed to Melquidia E. Cruz at the apartment, and the vehicle, a 1987 Buick automobile, was registered to Cruz at the same address. Cruz's name also appeared on the apartment's lease.

On February 22, 1995, Thomas, acting in an undercover capacity, called the telephone number provided by the informant. He spoke with an individual identified as "Imy" and scheduled a cocaine purchase in the parking lot at the apartment. Thomas arrived in the parking lot at 4:25 P.M., at which time he saw a man, later identified as Gonzalez, leave a second-floor apartment, come directly outside, and enter Thomas's automobile. Inside Thomas's vehicle, Gonzalez sold Thomas one-sixteenth of an ounce of cocaine for $60. Thomas and Gonzalez discussed the possibility of purchasing one-half ounce of cocaine later that day. Gonzalez told Thomas to call him later, after 5:30 P.M. At 5:50 P.M., Thomas called Gonzalez, who agreed to sell him the cocaine. At 6:05 P.M., Thomas once again drove to the parking lot at 15 Eagle Avenue. Inside Thomas's vehicle, Gonzalez sold Thomas one-half ounce of cocaine for $450. The two men then discussed additional purchases of larger amounts of cocaine. Gonzalez advised Thomas to call in advance so that he could be ready, explaining that he worked with a partner when arranging the sale of larger amounts of cocaine.

Over the next three weeks, Gonzalez sold increasingly larger amounts of cocaine to Thomas. On March 1, Gonzalez sold one ounce of cocaine to Thomas for $900, and sold him another ounce two hours later for another $900. Gonzalez was able to provide the first ounce sold to Thomas on demand. He sold the second ounce to Thomas that day after contacting his "partner." On March 8, Gonzalez sold four ounces of cocaine to Thomas for $3,600 in cash. On March 15, Gonzalez sold another four ounces of cocaine to Thomas for $3,600 in cash. The manner in which the transactions occurred remained consistent with the pattern established over the first two days of their relationship. When Thomas called to buy cocaine, Gonzalez either arranged a meeting at the Eagle Avenue parking lot to consummate the deal or told Thomas to call again so that he could secure delivery of larger quantities of drugs from his partner. Police surveillance revealed that an individual later identified as Solano arrived at 15 Eagle Avenue immediately prior to the March 8 and March 15 sales to Thomas, and stayed for approximately

thirty seconds. On Solano's March 8 visit to Gonzalez prior to Thomas's purchase of cocaine, Gonzalez was seen leaving Solano's car with a noticeable bulge in his pocket.

Between March 15 and March 29, Thomas spoke with Gonzalez about purchasing cocaine in amounts from ten ounces to one-half kilogram. Gonzalez agreed to sell the larger amounts, but explained that he would need to contact his partner beforehand in order to make the necessary delivery arrangements.

On March 31, 1995, Thomas applied for and received warrants to search the apartment and Solano's car. The affidavit in support of the application described in detail the events outlined above. Thomas also offered the opinion, based on facts documented from surveillance, that Gonzalez and Solano were operating a cocaine distribution business from the targeted premises, that Gonzalez had a readily available supply of cocaine, and that Solano supplied Gonzalez with cocaine, at times "fronting" or extending credit to Gonzalez on transactions involving large amounts of cocaine. An assistant clerk-magistrate issued the warrants with no special limitations on police indicative of an anticipatory warrant. Police executed the search warrant for the apartment the same day it was issued.

The clerk-magistrate could have inferred from the averments in the affidavit that (1) Gonzalez was a cocaine dealer; (2) he was able to sell between one-sixteenth and one ounce of cocaine to a customer[2] on demand without contacting his supplier, and most likely kept his supply at the apartment; (3) Gonzalez and Villar used Cruz's apartment, car, and telephone number in order to conceal their activities from law enforcement agents; (4) Gonzalez had relatively easy access to larger amounts of cocaine through Solano, his supplier; (5) Gonzalez and Solano were engaged in an ongoing commercial enterprise to sell and distribute cocaine, and (6) a significant amount of activity related to the cocaine enterprise took place at the apartment. Such inferences would have been reasonable, and therefore permissible. See *Commonwealth* v. *Taglieri*, 378 Mass. 196, 199, cert. denied, 444 U.S. 937 (1979). Taken as a whole and interpreted in a commonsense fashion, the affidavit provides a substantial basis on which the clerk-magistrate could properly

---

[2]We have also held that "[a] controlled purchase of narcotics, supervised by the police, provides probable cause to issue a search warrant." *Commonwealth* v. *Warren*, 418 Mass. 86, 89 (1994), citing *Commonwealth* v. *Luna*, 410 Mass. 131, 134 (1991).

conclude that the defendants were distributing cocaine, and that evidence related to the distribution of cocaine would be found at the apartment.

a. *Staleness.* We are not persuaded by the defendants' argument that the information in the affidavit was stale. Facts supporting probable cause must be "closely related to the time of the issue of the warrant [so] as to justify a finding of probable cause at that time." *Sgro* v. *United States*, 287 U.S. 206, 210 (1932). Timeliness of the facts must be "determined by the circumstances of each case." *Id.* at 210-211. *Commonwealth* v. *Atchue*, 393 Mass. 343, 349 (1984). "[I]f an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." *Commonwealth* v. *Vynorius*, 369 Mass. 17, 25 (1975), quoting *Bastida* v. *Henderson*, 487 F.2d 860, 864 (5th Cir. 1973). Here, the affidavit described six controlled purchases of increasing amounts of cocaine over a period of four weeks, and also asserted that plans were being made to buy more cocaine from the defendants in the future. The magistrate reasonably could have inferred that the defendants were engaged in ongoing criminal activity to distribute cocaine. The passage of two weeks between the last controlled purchase and the issuance of the search warrant did not cause the information in the affidavit to grow stale. *Commonwealth* v. *Vynorius, supra.* See *United States* v. *Harris*, 403 U.S. 573, 579 n.* (1971) (plurality opinion) (opinion of Burger, C.J.).

b. *Anticipatory warrant.* After the warrant was issued but before it was executed, Thomas called Gonzalez in the early afternoon of March 31 to arrange to purchase ten ounces of cocaine. Gonzalez's supplier was delayed in delivering the cocaine, but by late afternoon, Thomas was notified that the cocaine had arrived and would be ready for purchase in a few minutes. Shortly thereafter, police executed the search warrant.

Defense counsel argue that the police had no probable cause to search the apartment before the ten ounces of cocaine were delivered, and that the warrant should have been presented to the magistrate as an anticipatory warrant. We reject this argument for the reasons stated earlier, i.e., there was probable cause to believe smaller quantities of cocaine available for distribution would be found. Because probable cause existed at the time the warrant was issued, it was not an anticipatory war-

rant.[3] For this reason, the fact that police initiated a transaction prior to execution of the warrant has no relevance. The method used in executing a search warrant is generally left to the discretion of the police executing it. See *Commonwealth* v. *Garner*, 423 Mass. 735, 738 (1996). The motion judge was correct in denying the defendants' motion to suppress, although we rely on a different ground. See *Commonwealth* v. *Va Meng Joe*, 40 Mass. App. Ct. 499, 503 n.7 (1996), *S.C.*, 425 Mass. 99 (1997).

3. *Joint venture hearsay.* Villar and Solano claim that the trial judge erred in admitting extrajudicial statements by Gonzalez[4] because there was insufficient evidence other than Gonzalez's statements to establish their participation in a criminal joint venture with Gonzalez. We disagree. It is settled that the extrajudicial statements of coconspirators or joint criminal venturers may be admissible against the others involved if the existence of the conspiracy or joint venture has been shown by other evidence. *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 340 (1983). See Proposed Mass. R. Evid. 801 (d) (2) (E). "[A]n adequate probability of the existence of the common venture, including participation by the given defendant, [must] be established as a preliminary matter." *Commonwealth* v. *White*, 370 Mass. 703, 709 n.7 (1976). By "adequate probability," we mean that the Commonwealth must satisfy the judge by a preponderance of the evidence that a criminal joint venture took place between the declarant and the defendant before the declarant's statements can be admitted as proof of the joint venture. The statements must also have been made during the pendency of the cooperative effort and in furtherance of its goal. *Commonwealth* v. *Bongarzone, supra.* See Proposed Mass. R. Evid. 801 (d) (2) (E). This exception to the rule against hearsay is premised on a belief that "[t]he community of activi-

---

[3] "An anticipatory warrant, by definition, is a warrant that has been issued before the necessary events have occurred which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void." *United States* v. *Garcia*, 882 F.2d 699, 702 (2d Cir.), cert. denied sub nom. *Grant* v. *United States*, 493 U.S. 943 (1989). "Anticipatory search warrants typically relate to contraband in transit, where a specific described item is known to be on route to a specific person, often at a specified place, and the warrant is issued before the item reaches that person's hands or the premises to be searched." *Commonwealth* v. *Douglas*, 399 Mass. 141, 144 (1987).

[4] According to Trooper Thomas's testimony at trial, Gonzalez stated several times that he had to "reach out for" or "contact" his partner in order to gain access to the larger amounts of drugs.

ties and interests which exists among the coventurers during the enterprise tends in some degree to assure that their statements about one another will be minimally reliable." *Commonwealth* v. *Bongarzone, supra,* quoting *Commonwealth* v. *White, supra* at 712.

Here, Villar and Solano claim that there was insufficient evidence to show an adequate probability that the joint venture existed before Gonzalez's extrajudicial statements could be admitted. As to Solano, the other evidence presented at trial pointed to his involvement in the joint venture on two days, March 8 and March 15. At 12:10 P.M. on March 8, after Trooper Thomas had arranged a time to buy four ounces of cocaine from Gonzalez but before the transaction took place, police observed Solano drive to and stop in front of the entrance to 15 Eagle Avenue. Moments later, Gonzalez walked out of the apartment building at 15 Eagle Avenue and entered Solano's car. After approximately thirty seconds, Gonzalez emerged from Solano's car with a "baseball-size bulge" in his pocket which police had not seen before he entered the car. He then returned to the apartment building, and Solano then left the area. Approximately one hour and twenty minutes later, Thomas arrived at 15 Eagle Avenue and purchased four ounces of cocaine from Gonzalez. At approximately 2:13 P.M., Solano returned to 15 Eagle Avenue, got out of his car, rang the buzzer, entered the building, stayed inside for approximately thirty seconds, and then left the area again.

At 12:50 P.M. on March 15, after Thomas called Gonzalez to arrange the purchase of another four ounces of cocaine but before that transaction occurred, Solano arrived at 15 Eagle Avenue, parked his car, and entered the building. After thirty seconds, he left the building, returned to his car, and left the area. Approximately thirty minutes later, Thomas arrived and purchased four ounces of cocaine from Gonzalez. There was sufficient evidence that Solano was supplying Gonzalez with the larger amounts of cocaine sold to Trooper Thomas as part of a criminal joint venture to distribute cocaine for the judge to admit, and the jury to consider, evidence of Gonzalez's extrajudicial statements against Solano.[5]

There was also sufficient evidence other than Gonzalez's statements to permit the judge and then the jury to conclude

---

[5]This evidence, together with Gonzalez's extrajudicial statements, renders Solano's claim of error in the denial of his motion for a required finding of

that a criminal joint venture to distribute cocaine existed between Villar and Gonzalez. Villar was charged solely for the incidents which occurred on March 31. When police entered the apartment on March 31, they saw Villar standing in the kitchenette with a "big yellow sifter" in his hand, a pager on his person, and within a few feet of Gonzalez and a considerable amount of cocaine and drug paraphernalia. The jury heard testimony that sifters are used to "rerock" cocaine, a process by which cocaine is treated so that it appears to have a higher level of purity than it actually has. They also heard testimony that although pagers are used for legitimate purposes, they are also commonly used in the drug trade.

Villar argues that the judge should not have admitted the joint venture hearsay evidence because the jurors were not instructed that the defendants could be convicted under a theory of joint venture. The judge instructed the jury in accordance with the defendants' requests, and over the Commonwealth's objection. We review to determine whether any error created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Nascimento*, 421 Mass. 677, 681 (1996). Villar does not dispute the correctness of the judge's instruction as to the foundational requirements for the jury's consideration of Gonzalez's statements. The judge's instruction that the Commonwealth was required to prove the defendants had actual or constructive possession of the cocaine, and his refusal to instruct on joint venture, which deprived the Commonwealth of the opportunity to secure convictions under that alternative theory, did not preclude the jury's consideration of Gonzalez's extrajudicial statements under the joint venture exception to the hearsay rule. The instruction was more favorable than Villar was entitled to receive. There was no error as to the admission of Gonzalez's statements.

4. *Other claims.* Solano claims that the judge erred in failing to instruct the jury on the lesser included offense of simple possession because he could have been a buyer rather than a seller of cocaine. No evidence was presented at trial to support a verdict on a lesser included offense. See *Commonwealth* v. *Gould*, 413 Mass. 707, 715 (1992), and cases cited. There was no error.

Villar's argument with respect to "sentencing entrapment" is

not guilty meritless. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

foreclosed by *Commonwealth* v. *Garcia*, 421 Mass. 686, 692-693 (1996), where we rejected the argument that this theory should be considered by a fact finder in deciding whether the defendant was induced by the police to sell the larger amounts that would render him guilty of trafficking in cocaine. See *Commonwealth* v. *Ortiz*, 424 Mass. 853, 860-861 (1997).

*Judgments affirmed.*