# COMMONWEALTH vs. WILLIAM FIGUEROA.

No. 07-P-1863.

Plymouth. October 7, 2008. - August 7, 2009.

Present: DUFFLY, BROWN, & WOLOHOJIAN, JJ.

*Controlled Substances. Evidence,* Constructive possession, Informer. *Witness,* Police informer, Credibility. *Practice, Criminal,* Disclosure of identity of informer, Discovery.

At the trial of indictments charging the defendant with violations of the controlled substances laws, there was sufficient evidence from which the jury reasonably could have inferred that the defendant constructively possessed the cocaine found by police in the kitchen wastebasket of the apartment in which the defendant was present. [786-787]

A trial court judge did not err in denying a criminal defendant's motion to suppress evidence seized by police during the execution of a search warrant, brought on the ground that the first-time confidential informant whose tip led to the warrant did not meet minimum constitutional standards for veracity, where any defect in the informant's veracity was rendered immaterial by certain corroborating evidence, i.e., two properly monitored controlled purchases of cocaine by the police, as well as independent police investigation. [787-789]

A trial court judge did not err in denying a criminal defendant's pretrial motion for disclosure of allegedly exculpatory information regarding the Commonwealth's confidential informant, where the defendant failed to make at least a threshold showing that such exculpatory evidence was withheld or to establish, at a minimum, that the information sought was likely to be helpful to the defense. [789-791]

At the trial of indictments charging the defendant with violations of the controlled substances laws, the trial judge did not commit an abuse of discretion by permitting the Commonwealth to change its expert witness on the morning trial was set to commence, where the defendant had been placed on notice as to the substance of the testimony, which was largely generic and typical of the kind of expert testimony frequently offered in such cases. [791-793]

INDICTMENTS found and returned in the Superior Court Department on December 2, 2005.

Pretrial motions for informant information and to suppress

evidence were heard by *Joseph M. Walker, III*, J., and the cases were tried before *Charles M. Grabau*, J.

*Kenneth I. Seiger* for the defendant.

*Laurie Yeshulas*, Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted by a Superior Court jury of trafficking in cocaine, G. L. c. 94C, § 32E(*b*), and the same offense within 1,000 feet of a school, G. L. c. 94C, § 32J. On appeal, the defendant claims that (1) the Commonwealth failed to meet its threshold burden of proof with respect to the possession element of both offenses; (2) the defendant's motion to suppress was improperly denied, as the Commonwealth failed to establish the veracity of the confidential informant (informant or CI), whose tip led to the search warrant; (3) the defendant's pretrial motion for disclosure of information regarding the government's confidential informant was improperly denied; and (4) the trial judge erred in permitting the Commonwealth to make a change in its witness list on the day of trial. We affirm.

On August 30, 2005, Brockton police received information from a confidential informant that three Hispanic males were selling cocaine from the third-floor apartment of 53 West Park Street in Brockton. This information matched reports received by police from other residents of 53 West Park Street describing frequent visits to the third-floor apartment by multiple persons, activity consistent — at least in the experience of police — with illegal drug sales. To corroborate these reports, police conducted two controlled purchases of cocaine from the target apartment using CI to complete the transactions.

On the strength of this information, police obtained a search warrant for the third-floor apartment of 53 West Park Street. When they arrived to execute the warrant, the defendant refused to admit the officers, and police were forced to use a battering ram to gain entry. At the time, the defendant was alone inside the apartment.

Inside, police found 103 individually packaged bags of cocaine concealed in a kitchen wastebasket. The total weight of the drugs was 59.06 grams. Police also discovered a large quantity of drug trafficking paraphernalia, including razor blades, cellular telephones, cut plastic bags, inositol (a common cutting agent),

and a police scanner. A search of the defendant yielded ten individually wrapped bags of cocaine with a total weight of 5.9 grams. No pipes or other apparatus suggestive of active drug use was found in the apartment. Other pertinent facts are included in our analysis.

1. *Constructive possession.* The defendant argues that the Commonwealth presented insufficient evidence at trial from which the jury reasonably could have inferred that he constructively possessed the 103 packets of cocaine found in the kitchen wastebasket. Absent such proof, the defendant asserts that he could have been convicted, at most, of simple possession of the smaller quantity of drugs found on his person. In support of his claim, the defendant asserts that he was "merely present" in the apartment at the time the drugs were found; that is to say, that he had no connection to the apartment sufficient to impute ownership of the cocaine found therein to him. We disagree.

At the time of the search, police found the defendant alone inside the apartment. He was seated not more than ten feet away from where a substantial (and valuable) quantity of drugs was concealed. Further, police found mail addressed to the defendant[1] at the apartment, suggesting that the defendant lived there at least some of the time. *Commonwealth* v. *Ortega*, 441 Mass. 170, 175 (2004) (discovery of mail addressed to defendant at apartment in which illegal drugs were found significant factor in establishing constructive possession of same). Drug trafficking paraphernalia was in plain view in the apartment, including a police scanner and multiple cellular telephones; the inositol was found in the pantry. We also note that the defendant arguably evinced strong consciousness of guilt by refusing to admit police when they arrived to execute the search warrant. See *Commonwealth* v. *Hunt*, 50 Mass. App. Ct. 565, 570-571 (2000). Finally, at the time of the search, the defendant had ten packets of cocaine — the same type of drugs found in the wastebasket — in his pocket. See *Commonwealth* v. *Pratt*, 407 Mass. 647, 652 (1990) (fact that drugs found in possession of defendant were "same type" as drugs found in larger cache supports inference of constructive possession of latter).

---

[1]Some of the mail found in the apartment was addressed to "Jose Figueroa," the name that appeared on identification papers carried by the defendant at the time of his arrest.

While mere presence in an area where contraband is found is insufficient to show "the requisite knowledge, power, or intention to exercise control over the [contraband], . . . presence, supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.' " *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977), quoting from *United States* v. *Birmley*, 529 F.2d 103, 108 (6th Cir. 1976). See *Commonwealth* v. *Pimentel*, 73 Mass. App. Ct. 777, 780 (2009), and cases cited. Here, the foregoing factors amount to the requisite "other incriminating evidence." The government's proof, therefore, was not deficient as to constructive possession. Accordingly, the Commonwealth met its threshold burden of proof as to all charges of which the defendant was convicted.

2. *Reliability of informant's tip.* The defendant contends that the search of the apartment was unlawful, and so his motion to suppress should have been allowed. Specifically, he asserts that the confidential informant, on whom police relied in establishing probable cause, did not meet minimum constitutional standards for veracity[2]; as a result, all of the information provided by the informant should have been excluded from the probable cause calculus. See *Commonwealth* v. *Upton*, 394 Mass. 363, 369-377 (1985) (adopting *Aguilar-Spinelli*[3] standard for purposes of art. 14 of Massachusetts Declaration of Rights). Absent CI's information, the argument runs, the warrant application should have failed.

The Commonwealth, for its part, concedes that the first-time informant relied on here ordinarily would not meet the veracity requirements imposed by art. 14. See *Commonwealth* v. *Zuluaga*, 43 Mass. App. Ct. 629, 635 (1997). However, the Commonwealth argues that the two controlled purchases conducted by police render any such defect immaterial. Without question, a

---

[2]Under the now-familiar formulation, to establish an informant's reliability adequate to support a finding of probable cause, the government must offer sufficient evidence of both an informant's basis of knowledge and veracity. See *Commonwealth* v. *Robinson*, 403 Mass. 163, 164-165 (1988) (two-prong test of veracity and basis of knowledge necessary to establish probable cause under art. 14 of Massachusetts Declaration of Rights). The defendant does not contest that the informant's firsthand observations, if believed, would establish his basis of knowledge.

[3]See *Aguilar* v. *Texas*, 378 U.S. 108 (1964); *Spinelli* v. *United States*, 393 U.S. 410 (1969).

properly monitored controlled purchase of illegal drugs provides sufficient corroborating evidence to overcome any shortfalls in meeting the constitutional reliability requirements imposed on confidential informants. See *Commonwealth* v. *Cruz*, 430 Mass. 838, 842 n.2 (2000); *Commonwealth* v. *Baldasaro*, 62 Mass. App. Ct. 925, 926 (2004). The defendant questions whether the controlled purchases here were, in fact, properly monitored.

The ordinary procedure for carrying out a controlled purchase includes, inter alia, police observation of an informant throughout the transaction to ensure that the target of the investigation is the one from whom the drugs are obtained. Here, police saw the informant enter the multi-unit building in which the defendant's apartment was located but were not able to observe directly which apartment unit he entered. It is at least possible, therefore, that the informant obtained the drugs from another unit in the building. The defendant contends that this uncertainty prevents the government from relying on the controlled purchase to buttress the informant's reliability.

In establishing probable cause, however, certainty is not required. Moreover, the standards employed for determining whether the government has met its constitutional burdens must be informed by the practical demands of police investigation. Thus, in *Commonwealth* v. *Warren*, 418 Mass. 86, 90 (1994), the Supreme Judicial Court concluded that police were entitled to infer — and a magistrate could rely on such inference in issuing a search warrant — that an informant who entered a three-unit apartment building had made a controlled purchase within, despite the fact that police did not actually see the informant enter the target unit.

The fact that the apartment building in *Warren* — like the apartment building in the present case — contained only a small number of units was a key factor in concluding that police were entitled to rely on the controlled purchase there in establishing probable cause to search. Unsurprisingly, probability is the touchstone for determining whether probable cause has been established in any particular case. See *id.* at 90-91, and cases cited. In view of the similarity between the factual settings in *Warren* and the present case, we conclude that the controlled purchases here adequately established the informant's veracity.

Our conclusion in this regard is bolstered by the fact that the

informant's tip in this case was corroborated by at least some independent police investigation. See *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990) ("[i]ndependent police corroboration may make up for deficiencies in [a confidential informant's reliability]"). As the warrant affidavit recites, "[police officers] . . . have received several complaints about heavy traffic going to and from the third floor of 53 W. Park St., where some neighbors believed this to be consistent with drug activity." This type of evidence is frequently relied upon to shore up defects in an informant's reliability. Compare *Commonwealth* v. *Soto*, 35 Mass. App. Ct. 340, 344 (1993) (police observation of numerous short visits to target apartment by various unnamed persons relied upon in establishing informant's reliability). While the corroborative evidence here might not, standing alone, establish CI's veracity, when combined with the evidence of the controlled purchases, it is more than sufficient to meet the government's burden. The motion to suppress properly was denied.

3. *Failure to disclose identity of informant.* Before trial, the defendant moved for disclosure of "the identity of the . . . informant . . . as well as other information regarding this informant" on the theory that such information amounted to exculpatory evidence subject to the mandatory discovery requirements of *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963). Specifically, the defendant asserted that he was entitled to any evidence concerning the circumstances attending the controlled purchases involving CI, at least to the extent that such evidence might have established that someone other than the defendant (i.e., one of the defendant's family members) actually consummated these transactions with CI.

The defendant, however, misconstrues the reach of *Brady*. The holding in *Brady* did not create any "general constitutional right to discovery in a criminal case." *Weatherford* v. *Bursey*, 429 U.S. 545, 559 (1977). See *United States* v. *Scott*, 555 F.2d 522, 528 (5th Cir.), cert. denied, 434 U.S. 985 (1977) ("*Brady* does not permit a defense fishing expedition whenever it is conceivable that evidence beneficial to defendants may be discovered . . . [but instead] deals with prosecutorial misconduct in the form of withholding [exculpatory] information"). Rather, to

be entitled to relief under *Brady*, a defendant is required to make at least a threshold showing that exculpatory evidence was withheld. See *United States* v. *Navarro*, 737 F.2d 625, 631-632 (7th Cir.), cert. denied sub nom. *Mugercia* v. *United States*, 469 U.S. 1020 (1984). Here the defendant has failed to meet that burden.

The defendant argues in his brief that "the informant was a percipient witness to the incidents forming the basis of the [indictments]." In this he is mistaken, however. The government did not attempt to establish the defendant's guilt by reference to any of the transactions involving CI. Rather, the government relied exclusively on the evidence found in the apartment at the time of the defendant's arrest.

The defendant further argues that CI "had exculpatory information regarding the defendant's presence and activities in the apartment on prior occasions." However, it is wholly speculative on the defendant's part that CI, if called, would have testified that he or she had not purchased any cocaine from the defendant. Cf. *Guzman* v. *Commonwealth, ante* 466, 470-472 (2009). Further, even assuming that police records (or CI him or herself) would have disclosed — as the defendant now contends — that CI had dealt only with someone other than the defendant, that by no means would amount to exculpatory evidence for *Brady* purposes. The government's case against the defendant did not exclude the possible involvement of coventurers. In these circumstances, we conclude that the defendant has failed to meet his threshold burden of proof under *Brady*.

Further, even if the defendant's claim in this regard had not been presented under the rubric of a *Brady* violation,[4] but merely as a general request for disclosure of information regarding a confidential informant, it would still fail. In order to be entitled to such evidence, a defendant must establish, at a minimum, that the information sought "is relevant and helpful . . . or . . . essential to a fair determination of a cause." *Commonwealth* v. *Lugo*, 406 Mass. 565, 570 (1990), quoting from *Roviaro* v. *United States*, 353 U.S. 53, 60-61 (1957). In determining whether disclosure is

---

[4]Along these lines, we note that the defendant has abandoned any reference to *Brady* in his appellate brief and presents his claims on pure materiality grounds as discussed *infra*.

required in any particular case, a court must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." *Commonwealth* v. *Lugo*, 406 Mass. at 570.

Here, for the reasons already stated in our analysis of the defendant's *Brady* claim, the evidence concerning both CI's identity and the circumstances of the controlled purchases in which he or she participated were unlikely to be helpful to the defense. Despite the defendant's claims to the contrary, the government's case in no way depended on proof that the defendant was involved in any particular transactions, including the controlled purchases; CI was patently not "a percipient witness to the incidents forming the basis of the [indictments]" as the defendant alleged in his pretrial motion. Contrast *Commonwealth* v. *Dias*, 451 Mass. 463, 468-470 (2008); *Commonwealth* v. *Choice*, 47 Mass. App. Ct. 907, 909 (1999) ("stronger reason to disclose the identity of [an informant] who, the authorities claim, has participated in the crime"). Moreover, evidence that others were selling cocaine from the apartment in which he was found would not have negated the inference that the defendant was also involved in such sales. Balancing the minimal exculpatory value of the evidence sought by the defendant against the government's interest in preserving the anonymity of its informants, we conclude that the defendant's motion for disclosure of evidence regarding CI was properly denied, however that demand is characterized.[5] See *Commonwealth* v. *Douzanis*, 384 Mass. 434, 441 (1981) ("government's privilege not to disclose the identity of an informant has long been recognized in this Commonwealth").

4. *Substitution of expert witness.* On the morning trial was set to commence, the Commonwealth informed the court that it wished to make a substitution in its witness list; viz., the Commonwealth wanted to call State Trooper Long in place of State Trooper Keating to testify as an expert witness on the customary business practices of the illegal drug trade. The prosecutor

---

[5]To the extent that it is viewed by the defendant as a separate claim, we conclude on the same basis that the defendant's motion for disclosure of police surveillance positions was likewise properly denied. See *Commonwealth* v. *Lugo*, 406 Mass. at 570.

explained that, due to the fact that the defendant's trial had been continued twice, Keating was no longer available to testify. The defendant objected to the proposed switch on the ground that he had no time to prepare adequately for cross-examination of Long.

The trial judge then conducted a lengthy voir dire during which defense counsel was afforded ample opportunity to probe both the scope of Long's proposed testimony as well as his expert credentials. At the conclusion of the voir dire, the defendant renewed his objection, again arguing that he would necessarily be prejudiced by any last minute change in the witness list. The judge, however, decided to admit the contested testimony, the defendant's objection notwithstanding.

As the defendant concedes, a trial judge has broad discretion to admit expert evidence. See *Commonwealth* v. *Grissett*, 66 Mass. App. Ct. 454, 457 (2006). However, that discretion is by no means unlimited. The purpose of pretrial discovery orders is to prevent the admission of "surprise" evidence and the concomitant prejudice often associated with same. See, e.g., *Commonwealth* v. *Fossa*, 40 Mass. App. Ct. 563, 567 (1996). Where a previously undisclosed witness is proffered on the day of trial, the other side may well have difficulty mounting meaningful cross-examination. See *id.* at 568. In this particular case, however, we detect little possibility of such prejudice, and conclude that the trial judge did not abuse his discretion in admitting Long's expert testimony.

Supporting our conclusion that the evidence was properly admitted are the following factors: (1) the defendant concedes that he had been placed on notice that a State trooper would testify as an expert on the sales practices of the illegal drug trade; (2) Long's testimony was likely not substantially different from the testimony Keating would have offered; and (3) the testimony was not overwhelmingly powerful in relation to other evidence proffered by the government. In all respects, the contested evidence was largely generic and typical of the kind of expert testimony frequently offered in cases involving charges of illegal drug distribution. In these circumstances, we do not detect any prejudice that might entitle the defendant to relief.[6] Compare *Commonwealth* v. *La-*

---

[6]Our decision today should not be read as an invitation to a cavalier disregard

*Faille*, 430 Mass. 44, 53 (1999); *Commonwealth* v. *Junta*, 62 Mass. App. Ct. 120, 123-125 (2004).

*Judgments affirmed.*

of discovery rules. Both sides in a criminal proceeding must make every reasonable effort to comply with their responsibility to disclose the identities of all witnesses in advance — or run the risk of having evidence excluded. The Commonwealth, charged, as it is, with protecting a defendant's due process rights, bears an especially strict burden in this regard. See *Brady* v. *Maryland*, 373 U.S. at 87. However, in this case, we are convinced that the government had a legitimate basis for the late substitution of witnesses and that the last minute change did not materially affect any aspect of the defendant's trial strategy or otherwise impair his ability to challenge the evidence against him.