NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1633                                       Appeals Court

COMMONWEALTH  vs.  PAULO MONTEIRO.


No. 16-P-1633.

Bristol.     January 12, 2018. - June 28, 2018.

Present:  Vuono, Agnes, & McDonough, JJ.


Controlled Substances.  Constitutional Law, Search and seizure,
     Probable cause.  Search and Seizure, Probable cause,
     Warrant, Affidavit.  Practice, Criminal, Motion to
     suppress.



Indictment found and returned in the Superior Court
Department on January 14, 2016.

A pretrial motion to suppress evidence was heard by Raffi
N. Yessayan, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Margot Botsford, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.


Robert P. Kidd, Assistant District Attorney, for the
Commonwealth.
David R. Rangaviz, Committee for Public Counsel Services,
for the defendant.

AGNES, J.  In this interlocutory appeal by the Commonwealth, we must decide whether the information provided by a first-time, confidential police informant (CI) was sufficiently corroborated by a single, imperfectly executed controlled "buy" of cocaine for the purposes of establishing probable cause for the issuance of a warrant to search the defendant's apartment.  We conclude that the affidavit was sufficient to establish the CI's basis of knowledge and veracity, and that the information provided by the CI, along with information gathered by the police, as set forth in the affidavit in support of the search warrant, established probable cause.  Accordingly, we reverse the order allowing the defendant's motion to suppress.

Background.  The affidavit filed as part of the warrant application contained the following facts.

In November, 2015, Detective Gracia of the New Bedford police department spoke with the CI, whose identity and whereabouts were known to the police.[1]  The CI stated that they had contacted the defendant, Paulo Monteiro, by telephone or had "show[n] up [at] his residence" in New Bedford to purchase cocaine in the past.  The CI informed Detective Gracia that they continue to purchase cocaine from the defendant.  The CI

---

[1] The affidavit does not indicate whether the CI previously worked with the New Bedford police department.  We therefore assume that the CI was a first-time informant.

provided Detective Gracia with a physical description of the seller ("a Cape Verdean male 20 years old approx 6' tall with a medium build") and the seller's address. Detective Gracia confirmed via the police department's computer system that a person named Paulo Monteiro had the same listed address as that provided by the CI. Detective Gracia also reviewed the defendant's criminal record and determined that he was on probation for statutory rape. A booking photograph of the defendant was shown to the CI. The CI stated that the person in the photograph, whom the CI identified as the defendant, was the person who had sold cocaine to the CI in the past.

Detective Gracia later met the CI to arrange a controlled buy of cocaine from the defendant. The CI was searched and determined to be free of contraband and money. Detective Gracia then gave the CI money to purchase cocaine from the defendant. Detective Gracia and other members of the New Bedford police department maintained surveillance of the CI. They observed the CI walking toward the rear exterior door of the defendant's apartment building.[2] A short time later, the CI was seen leaving the walkway leading to the rear exterior door. The defendant

---

[2] The layout of the apartment building is unclear from the statements in the affidavit. The affidavit indicated that the defendant lived on the first floor of the apartment building, but did not indicate how many other units were contained in the building, whether other apartments were located on the first floor, or whether the rear exterior door led directly into the defendant's apartment.

was not observed entering or exiting the apartment building through the rear exterior door. The CI was kept under surveillance until the CI met Detective Gracia at a predetermined location where the CI provided Detective Gracia with a quantity of what the CI said was cocaine. The CI stated that they purchased the cocaine from the defendant inside his first-floor apartment. The CI was again searched and determined to be free of money and contraband. The material the CI turned over to the police was field tested and found to be cocaine.

Detective Gracia applied for, and a magistrate subsequently issued, a warrant to search the defendant's apartment. Upon execution of the search warrant, the police found narcotics and drug paraphernalia inside the defendant's apartment. An indictment was returned against the defendant for trafficking in cocaine. See G. L. c. 94C, § 32E(b). The defendant moved to suppress the contraband and related drug paraphernalia found during the search on the basis that the affidavit provided to the magistrate did not establish probable cause. The defendant's motion to suppress was allowed after the motion judge concluded that the affidavit failed to establish both the CI's basis of knowledge and veracity. For the reasons set forth below, we reverse.

Discussion. Article 14 of the Massachusetts Declaration of Rights requires that a search warrant issue only upon a showing

of probable cause. Commonwealth v. Foster, 471 Mass. 236, 241 (2015). In determining whether the probable cause standard was met, our inquiry "begins and ends with the 'four corners of the affidavit'" supporting the application for the search warrant. Commonwealth v. O'Day, 440 Mass. 296, 297 (2003), quoting from Commonwealth v. Villella, 39 Mass. App. Ct. 426, 428 (1995). "Because a determination of probable cause is a conclusion of law, we review a search warrant affidavit de novo." Foster, supra at 242.

In Commonwealth v. Upton, 394 Mass. 363, 373 (1985) (Upton II), the Supreme Judicial Court determined that "art. 14 provides more substantive protection to criminal defendants than does the Fourth Amendment" to the United States Constitution. When an affidavit in support of a search warrant is based on information supplied by an unknown informant, art. 14 requires the magistrate called upon to issue a search warrant to apply the so-called Aguilar-Spinelli test to assess whether the affidavit is sufficient to establish probable cause to issue the warrant. See Aguilar v. Texas, 378 U.S. 108 (1964); Spinelli v. United States, 393 U.S. 410 (1969).[3]

---

[3] In particular, in Upton II, the Supreme Judicial Court rejected the decision of the United States Supreme Court in Illinois v. Gates, 462 U.S. 213 (1983), and the "totality of the circumstances" test announced there to replace the Aguilar-Spinelli test.

> "Where information from an unidentified informant is relied on to supply probable cause to search, art. 14 . . . requires that the affidavit apprise the magistrate of (1) some of the underlying circumstances from which the informant concluded that contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was credible or the information reliable (the veracity test)."

Commonwealth v. Warren, 418 Mass. 86, 88 (1994).

The defendant concedes, and we agree, that the basis of knowledge test was satisfied by the CI's statement that they had purchased cocaine from the defendant inside the target apartment within seventy-two hours of the warrant issuing.  See Commonwealth v. Desper, 419 Mass. 163, 166 (1994).

We next examine whether the veracity prong has been satisfied.  The affidavit submitted to the magistrate indicated that the CI was a first-time, confidential police informant, which rendered the statements made by the CI contained in the

---

> "The test we adopt has been followed successfully by the police in this Commonwealth for approximately twenty years. It is a test that aids lay people, such as the police and certain magistrates, in a way that the 'totality of the circumstances' test never could.  We believe it has encouraged and will continue to encourage more careful police work and thus will tend to reduce the number of unreasonable searches conducted in violation of art. 14. We reject the argument that the higher standard will cause police to avoid seeking search warrants.  We have no sense, and certainly we have no factual support for the proposition, that in recent years police in this Commonwealth have risked conducting warrantless searches because of the unreasonable strictures of the Aguilar-Spinelli test."

Upton II, 394 Mass. at 376.

affidavit, standing alone, insufficient to satisfy the veracity prong of the Aguilar-Spinelli test. See Commonwealth v. Alfonso A., 438 Mass. 372, 376 (2003) ("Although police knowledge of the CI's 'identity' and 'whereabouts' would not be adequate standing alone to confirm the informant's reliability, it is a factor that weighs in favor of reliability"); Commonwealth v. Figueroa, 74 Mass. App. Ct. 784, 787 (2009) (information from first-time informant "ordinarily would not meet the veracity requirements imposed by art. 14").

However, "a properly monitored controlled purchase of illegal drugs provides sufficient corroborating evidence to overcome any shortfalls in meeting the constitutional reliability requirements imposed on confidential informants." Figueroa, supra at 787-788. See Commonwealth v. Luna, 410 Mass. 131, 134 (1991) (two controlled purchases of narcotics by confidential informant were sufficient, standing alone, to provide probable cause to search defendant's home); Warren, 418 Mass. at 87, 89 (tip containing detailed information about defendant's apartment and location of drugs contained therein, coupled with single controlled buy, sufficient to establish informant's veracity); Villella, 39 Mass. App. Ct. at 427-428 (probable cause established where police corroborated portions of informant's detailed tip and informant made single controlled buy at defendant's residence through intermediary). See also

Commonwealth v. Cruz, 430 Mass. 838, 842 n.2 (2000), citing

Warren, supra.[4]  In Desper, 419 Mass. at 168, the Supreme

Judicial Court set forth the essential components of a

controlled buy:

> "(1) a police officer meets the informant at a
> location other than the location where is it suspected
> that criminal activity is occurring; (2) the officer
> searches the informant to ensure the informant has no
> drugs on his person and (usually) furnishes the
> informant with money to purchase drugs; (3) the
> officer escorts or follows the informant to the
> premises where it is alleged illegal activity is
> occurring and watches the informant enter and leave
> those premises; and (4) the informant turns over to
> the officer the substance the informant has purchased
> from the residents of the premises under
> surveillance."

Here, the affidavit does not indicate that the affiant observed

the CI's physical entry into, or exit from, the building housing

the defendant's apartment during the course of the controlled

buy.[5]  The defendant argues that this deficiency in the

controlled buy rendered the information provided by the CI

unreliable for the purposes of establishing probable cause.

---

[4] Courts in other jurisdictions have deemed a single controlled buy sufficient to establish probable cause.  See People v. Williams, 139 Mich. App. 104, 108 (1984), overruled in part on other grounds, People v. Russo, 439 Mich. 584, 603-604 (1992);  State v. Powell, 53 S.W.3d 258, 263 (Tenn. Crim. App. 2000); State v. Barrett, 132 Vt. 369, 370, 374 (1974).

[5] As discussed in note 2, supra, the affiant failed to state with specificity whether the rear exterior door mentioned in the affidavit led directly into the defendant's apartment or into an apartment building that housed multiple units, including the defendant's apartment.

Although "the steps customary in a controlled buy should be taken" when a controlled buy is being used to corroborate a statement made by a confidential informant that otherwise would not be sufficient to establish probable cause, id. at 170, probable cause may nevertheless be established where the police fail to comply with one of the four investigatory steps customarily associated with a controlled buy.[6]  See id. at 170-171 (probable cause requirement was met where police failed to search confidential informant for contraband before two controlled buys).  Here, the magistrate was not compelled to conclude that because the police did not observe the CI's physical entry into and exit from the apartment building, the information contained in the affidavit was insufficient to establish probable cause.  In the circumstances of this case, the police observation of the CI walking toward the door to the building and then a few minutes later walking away from that area and turning over a quantity of drugs, when coupled with the other facts, was sufficient to support the magistrate's conclusion that the CI was credible.  In cases involving a controlled buy of drugs from a seller who is located inside a

---

[6] The result we reach should not be understood as encouragement to conduct controlled buys without strict compliance with the investigatory steps set forth in Desper, supra.  Instead, we recognize that it may not be possible in every case for the police to observe an informant's actual entry into the building in which the seller's housing unit is located.

multiunit building, we do not require that the police observe the informant enter the particular apartment where the transaction is reported to have occurred in order to demonstrate the reliability of the informant. See Warren, 418 Mass. at 90 ("It is not fatal to the warrant application that the police did not observe which of the three apartments the informant entered. Based on the information provided by the informant and their own observations, the police could infer that the defendant was dealing drugs from his second-floor apartment").

"In dealing with probable cause . . . we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men . . . act." Commonwealth v. Hason, 387 Mass. 169, 174 (1982), quoting from Brinegar v. United States, 338 U.S. 160, 175 (1949). To that end, "the question is whether reasonable and prudent people would act on the basis of the information gathered by the police, not whether the information would satisfy legal technicians." Commonwealth v. Fontaine, 84 Mass. App. Ct. 699, 704 (2014), citing Brinegar, supra. Here, the controlled buy was executed less than seventy-two hours before the filing of the warrant application and affidavit. The affidavit indicated that the CI, whose identity and whereabouts were known to Detective Gracia, see Alfonso A., 438 Mass. at 375-376, positively identified the defendant as having sold the

CI cocaine from the target apartment in the past. The CI reported that they had been buying cocaine from the defendant at the location to be searched. The affidavit further stated that the defendant was on probation for committing a serious felony. The affidavit indicated that all the essential steps of a controlled buy were met, with the exception that the CI was not directly observed entering or exiting the building or target apartment. While the execution of the controlled buy was lacking in this respect, the affidavit stated that the CI was observed walking toward the rear door of the defendant's apartment building, returned a short time later under police surveillance with a quantity of cocaine from the vicinity of the rear exterior door, and informed the officers that they purchased the cocaine from the defendant inside the apartment. This information was sufficient to allow the magistrate to reasonably infer that the CI entered and purchased drugs in the defendant's apartment. See Warren, 418 Mass. at 90; Fontaine, supra at 704, quoting from Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002) ("In reviewing affidavits in support of search warrants, we allow 'considerable latitude' for the drawing of inferences").[7]

---

[7] The Supreme Judicial Court has "held repeatedly that a magistrate should rely on '[r]easonable inferences and common knowledge . . . in determining probable cause.'" Commonwealth v. Byfield, 413 Mass. 426, 429-430 (1992), quoting from

Finally, we are mindful that in order to encourage the police to apply for search warrants, a reviewing court should allow "a certain leeway or leniency in the after-the-fact review of the sufficiency of applications for warrants." Commonwealth v. Corradino, 368 Mass. 411, 416 (1975). See United States v. Ventresca, 380 U.S. 102, 109 (1965); Commonwealth v. Cruz, 430 Mass. 838, 840 (2000); Commonwealth v. Monterosso, 33 Mass. App. Ct. 765, 770 (1992).

For the above reasons, we conclude that the affidavit, "taken as a whole and read in a commonsense fashion," Alphonso A., 438 Mass. at 375, demonstrated that the CI provided the police with sufficiently reliable information to support the magistrate's probable cause determination.[8]

---

Commonwealth v. Alessio, 377 Mass. 76, 82 (1979). The defendant relies on Desper, 419 Mass. at 171 n.5, for his argument that no inferences can be drawn with respect to probable cause determinations based on controlled buys. In Desper, the court was merely pointing out that the inclusion of the term "controlled buy" in an affidavit, without more, does not give rise to an inference that all of the investigatory steps of a controlled buy were met in a particular case. Ibid. Here, the steps taken to control the buy were explicitly set out in Detective Gracia's affidavit.

[8] This is not a case in which the controlled buy was insufficient to establish a nexus between the defendant's drug activity and the target apartment. In Commonwealth v. Pina, 453 Mass. 438, 439-440 (2009), the informant making the controlled buy was instructed to meet the defendant at a prearranged location away from the defendant's residence. The defendant then left his residence and proceeded to complete a drug transaction with the informant at the predetermined location. Ibid. The Supreme Judicial Court held that the information

<u>Order allowing motion to
suppress reversed</u>.

---

contained in the affidavit, including the description of the
controlled buy, was insufficient to establish a nexus between
the location to be searched (the defendant's apartment) and the
defendant's drug activity.  <u>Id</u>. at 442.  Here, in contrast, the
affiant sought a warrant to search the defendant's apartment
after the CI made a controlled buy at the defendant's apartment
and where the CI had previously purchased cocaine from the
defendant's apartment.