NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-820

COMMONWEALTH

vs.

EDDY GUERRERO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from his convictions for trafficking in fentanyl with a net weight of over ten grams, G. L. c. 94C, § 32E (c 1/2), and for possession of cocaine, G. L. c. 94C, § 34. He argues that because the Commonwealth failed to demonstrate the reliability of a confidential informant, the police lacked probable cause to search the defendant on September 27, 2017, when the police discovered and seized from the defendant nine bags of fentanyl weighing fifty grams and two bags of cocaine weighing approximately one gram. He argues further that there was insufficient evidence to demonstrate beyond a reasonable doubt that the defendant had the intent to distribute drugs rather than merely to possess them for personal use. We affirm.

"In reviewing the denial of a motion to suppress, we accept the judge's findings of fact absent clear error" (quotation omitted).  Commonwealth v. Guardado, 491 Mass. 666, 674, S.C., 493 Mass. 1 (2023).  The judge in this case found that Sergeant Jonathan Lagoa testified at the hearing on the motion to suppress that a confidential informant told Sergeant Lagoa "that a man named 'Juan' was selling heroin and/or fentanyl throughout New Bedford from Apartment 1 Rear at 224 Ashley Boulevard."  The confidential informant described "Juan" as dark skinned, in his mid-thirties, with a slim build.

During the week of September 17, 2017, Sergeant Lagoa directed the confidential informant to contact a person that the confidential informant did not know, and that the sergeant did not know, apparently in order to attempt to buy drugs.  The confidential informant contacted the person to whom the sergeant had directed him, and that person directed him to 224 Ashley Boulevard, Apartment One Rear.[1]

---

[1] The defendant does not argue that there is clear error in the judge's finding "that a man named 'Juan' was selling heroin and/or fentanyl throughout New Bedford from Apartment 1 Rear at 224 Ashley Boulevard."  Because of the paucity of information introduced by the Commonwealth, the informant's use of this address seems odd.  The sergeant testified that an unknown person subsequently directed the informant to that very address, presumably to buy drugs.  Unless there is more to the story -- for example, the police having reason to suspect that the unknown person was linked to someone selling drugs from that address, something of which there is no evidence in the record -- this would be a remarkable coincidence.  Nonetheless,

The sergeant searched the confidential informant, gave him money, and sent him to the building containing that apartment, while "maintain[ing] surveillance." The sergeant described this as a "controlled buy."

The sergeant described the informant as "a reliable confidential informant," but gave no other details as to the basis for his conclusion that the informant was reliable. (Testimony about the legal conclusion that an informant is reliable is, obviously, an insufficient basis for a finding of reliability.)

The sergeant then testified that on September 27, 2017, the same confidential informant contacted him and told him that "Juan" was currently selling heroin from 224 Ashley Boulevard, Apartment One Rear, and that he had observed there "additional large quantities of heroin packaged for street-level sales." He described "Juan" as wearing a grey hooded sweatshirt with a white hat.

The sergeant set up surveillance at that location, and three hours later a dark skinned man exited Apartment One Rear,

when asked "prior to this date, you had received some information regarding heroin sales from that apartment -- from that location? . . . And, that information came from a confidential, reliable informant?," Sergeant Lagoa answered "That's correct," and made clear that this was the same informant who made the controlled buy there, i.e., the one whose tip is at issue here. Thus the judge's finding is adequately supported.

wearing a grey sweatshirt and a white hat.  The sergeant directed two detectives that were assisting him in the investigation to stop the individual, later identified as the defendant, which they did.  The defendant was cooperative with the officers but did not speak English and the detective, with no indication the defendant was armed and dangerous, reached for and felt the individual's waistband, finding the fentanyl and cocaine that are at issue here.

Discussion.

However it is characterized, the officer's warrantless search could only have been justified if there was probable cause to arrest the defendant, in which case it would have been a lawful search incident to a lawful arrest.  The defendant's first argument is that the Commonwealth failed to put in sufficient evidence to support a finding that the informant's tip, that "Juan" was selling heroin from that apartment on September 27th, was reliable enough to support a conclusion that there was probable cause to arrest and/or search him at the time the police did so.

When a search is justified by a tip from a confidential informant, as it was in this case, under Massachusetts law the Commonwealth must put in sufficient evidence to show both the confidential informant's "basis of knowledge" and the informant's "veracity."  See Commonwealth v. Upton, 394 Mass.

4

363, 374-375 (1985) (retaining the Aguilar-Spinelli test, see Spinelli v. United States, 393 U.S. 410 [1969]; Aguilar v. Texas, 378 U.S. 108 [1964], under art. 14 of the Declaration of Rights despite its abandonment by the Supreme Court with respect to the Fourth Amendment to the United States Constitution).

In this case, the basis of knowledge prong of this inquiry is easily met. The confidential informant asserted that he had seen "Juan" with heroin packaged for street-level sales and that "Juan" was at the apartment selling heroin. Being an eyewitness to something is self-evidently sufficient to demonstrate an adequate basis of knowledge. Commonwealth v. Mendes, 463 Mass. 353, 365 (2012) ("firsthand knowledge through personal observation . . . has repeatedly been held to satisfy the basis of knowledge prong").

The issue, however, is the veracity of the informant who provided the tip. There is no evidence that the informant had a track record of providing information that had led to arrests or convictions. Compare Commonwealth v. Ponte, 97 Mass. App. Ct. 78, 82 (2020) (in which there was no indication that the informant had a prior history with the police department), with Commonwealth v. Vynorius, 369 Mass. 17, 21 (1975) (in which reliability was shown by "a past occasion on which the informant had furnished police with accurate information . . . [that] assisted a police investigation and resulted in the recovery of

5

a stolen battery").  Nor is there even evidence that the police knew where the confidential informant lived or how to find him, such that he might be deterred from making a false allegation. Commonwealth v. Costa, 448 Mass. 510, 516 (2007) ("according more weight to the reliability of identified persons . . . [because they] may be subject to charges of filing false reports and risk retaliation").  And nothing in the evidence indicates that prior to receiving the tip on September 27th, the police confirmed the confidential informant's earlier tip that someone named "Juan" was selling drugs throughout New Bedford.

The veracity of the informant thus depends on what, exactly, was confirmed about his initial tip by the apparent purchase of drugs described by the sergeant as a "controlled buy."  (Although no witness testified that drugs were bought at the apartment, we think it is a reasonable inference that a "controlled buy" mentioned by a police officer engaged in a drug investigation refers to a purchase of drugs.)

To begin with, the motion judge did find that the informant purchased the drugs at the controlled buy from "Juan."  There is, however, no evidence of that in the transcript of the hearing on the motion to suppress, and that finding is not supported by the record evidence.  At no point did Sergeant Lagoa testify that drugs were bought from "Juan," that the confidential informant described the person who sold him the

drugs, or that the confidential informant asserted that the person selling drugs out of the apartment on the morning of September 27th was a person he had seen at or purchased drugs from at that same address ten days earlier.

Nonetheless, the purchase of drugs from the apartment identified by the informant in his initial tip does provide corroboration of that tip sufficiently to demonstrate the requisite veracity. The mere corroboration of facts that could easily be known by any number of people does not demonstrate the veracity of that portion of the tip that contains the kind of private information that would demonstrate an informant was a reliable insider whose statements about a person's secretive unlawful activity could be believed. See Commonwealth v. Va Meng Joe, 425 Mass. 99, 103 (1997). But the fact that drugs were being sold from a particular apartment is not a fact easily known by members of the public, and that fact was corroborated by the September 17 controlled buy.

The defendant argues that evidence of the controlled buy was insufficient because there was no evidence of how the apartment was monitored during the buy, or even whether the defendant indeed went into the particular apartment identified. See Ponte, 97 Mass. App. Ct. at 83 ("In detailing the circumstances of the controlled buy, the [affiant] must provide enough context and details for a determination that the police

properly supervised the controlled buy and that the evidence yielded was reliable").

There was no specific testimony of how the sergeant performed his surveillance at the controlled buy, or of what he saw the informant do. But he did testify that he "maintained surveillance" throughout the controlled buy from that apartment. This evidence certainly could have been stronger. Indeed, the Commonwealth elicited so little evidence from the sergeant that this case is truly a close one. But where the officer said the controlled buy was made from the apartment and said he maintained surveillance throughout the controlled buy, the caselaw indicates that in such circumstances, even in the absence of evidence of the informant entering the building or the target apartment, such a controlled buy is adequate to support a finding of informant credibility. See Commonwealth v. Monteiro, 93 Mass. App. Ct. 478, 483 (2018).[2] Consequently we see no error in the judge's conclusion that there was probable cause at the time of the search.

The defendant also argues that the evidence at trial was insufficient to support the finding of specific intent to

---

[2] As mentioned above, we think the description of the event as a "controlled buy" implies that illegal drugs were purchased by the informant, who the sergeant testified was searched prior to the purchase. In this context, given all the facts and circumstances, it does not matter what specific drug was purchased.

distribute, but the State trooper's testimony that the amount and packaging of the fentanyl was a stronger indication of an intent to distribute than of simple possession for personal use was sufficient to support the conviction.

The judgments therefore are affirmed.

<u>Judgments affirmed</u>.

By the Court (Rubin, Neyman & Walsh, JJ.[3]),

*Anne M. Thomas*
Assistant Clerk

Entered: January 18, 2024.

---

[3] The panelists are listed in order of seniority.