COMMONWEALTH *vs.* VINCENT CRAWFORD
(and three companion cases[1]).

Suffolk. January 10, 1991. - May 9, 1991.

Present: LIACOS. C.J., WILKINS, NOLAN, O'CONNOR. & GREANEY. JJ.

*Probable Cause. Constitutional Law*, Search and seizure, Probable cause.
*Search and Seizure*, Affidavit, Probable cause.

In a criminal case, in which the defendants sought to suppress evidence
seized in a warrantless search, the matter was remanded for a new
hearing on the issue of the reliability of the information provided to the
police by an unidentified informant. [78-80]

INDICTMENTS found and returned in the Superior Court
Department, two on December 10, 1987, and two on Decem-
ber 11, 1987, respectively.

Pretrial motions to suppress evidence were heard by *Guy
Volterra*, J.

Leave to appeal was allowed by *Lynch*, J., in the Supreme
Judicial Court for the county of Suffolk and the appeal was
reported by him.

*Carmel Motherway*, Assistant District Attorney, for the
Commonwealth.

*William F. Fahey* (*Francis J. Hurley* with him) for Gail
Pina.

*Thomas J. Amoroso* for Vincent Crawford.

NOLAN, J. This matter involves an interlocutory appeal by
the Commonwealth from the Superior Court's order of sup-
pression of evidence. Police seized the evidence in a warrant-
less search at the scene of an arrest. The judge determined
that the arresting officer did not have probable cause to be-

---

[1]The three companion cases are one against Vincent Crawford and two
against Gail Pina.

lieve either that a crime was being committed or that contraband would be found in the automobile which was searched. We reverse the order and remand for a new hearing on the issue of the reliability of the information provided by an unidentified informant.

1. *Facts.* The motion judge found the following facts: On the evening of October 21, 1987, State Trooper Stephen Matthews met with a confidential informant concerning the activities of the defendant Vincent Crawford. The informant had learned from Crawford that Crawford was planning to replenish his supply of cocaine that evening. The informant also told Officer Matthews that Crawford would have with him cocaine which would be readily available for sale. According to the informant, Crawford had sent his girl friend to New York that day to pick up a large amount of cocaine. Crawford told the informant that the woman would return to Boston by rail, arriving sometime around midnight. The informant said Crawford was planning to meet the woman at South Station, Boston, and would be driving his grey Datsun Maxima automobile, Massachusetts registration 217MPC.

As a result of this information, Officer Matthews confirmed with the Registry of Motor Vehicles that Crawford owned a grey Datsun Maxima, Massachusetts registration 217MPC. Officer Matthews also discovered that Crawford's driver's license had been suspended.

At about 11:30 P.M. on October 21, 1987, Officer Matthews and four other officers established a stakeout at the South Station Amtrak terminal in Boston. Shortly after midnight, the officers noticed Crawford. Crawford was not driving the Maxima described in the tip, but he was driving a Datsun Sentra automobile, which he parked near South Station. The Maxima, driven by another man, followed the Sentra. Crawford then conversed with the driver of the Maxima.

Shortly after 1:00 A.M., the Amtrak train from New York arrived at the station. Officer Matthews had learned that the train was scheduled to arrive at midnight but had been delayed. Crawford got into the Sentra and the driver of the Maxima approached two women who had come from the

train. One of these women was the defendant Gail Pina. The three walked toward Crawford and the vehicles. Officer Matthews observed Pina carrying a handbag and a pink travel bag. Pina and the other women started to get into the Sentra, the car occupied by Crawford.

At this point, Officer Matthews and the other officers intervened. All of the individuals were frisked for weapons, and Officer Matthews seized the pink travel bag from Pina. In the bag was a large blue object which Officer Matthews knew from his experience to be consistent with a packaged kilogram of cocaine.

Officer Matthews told all four individuals that they were under arrest for trafficking in cocaine and advised each of them of their rights. Pina then told Officer Matthews that the other woman had nothing to do with the cocaine. Officer Matthews opened the pink bag and discovered two wrapped kilograms of cocaine inside. Officer Matthews then searched the Sentra. On the floor behind the seat, he discovered a shoe box containing a large amount of cocaine. A search of Crawford revealed cocaine in his socks.

Crawford and Pina moved to suppress the evidence on the grounds that there was no probable cause sufficient to support either the arrest or the search of the car. The trial judge held an evidentiary hearing to determine whether there was probable cause.

Officer Matthews relied heavily on the information provided by the confidential informant in determining that there was probable cause. During the inquiry into the credibility of the informant, Officer Matthews stated that information from this informant had, in the past, led to the arrest of persons and the seizure of controlled substances. The officer refused to reveal the names of those individuals arrested out of fear that doing so would effectively identify the informant and subject the informant to grave danger. On the Commonwealth's suggestion, the judge held an in-camera hearing, at which only the judge, the officer and the court reporter were present, and during which the judge inquired into the credibility of the informant. He emerged from the hearing and

announced that the information provided therein, combined
with the open court testimony, had satisfied both the basis of
knowledge test and the veracity test.

The judge later reconsidered his actions. He held that the
in-camera hearing violated the defendant's confrontation
rights and was thus illegal. Disregarding the in-camera testi-
mony, the judge held that there was not sufficient corrobora-
tion of the details of the tip to allow it to give rise to proba-
ble cause. He therefore excluded the evidence. The
Commonwealth applied for leave to file an interlocutory ap-
peal. A single justice of this court allowed the application.
We vacate the order of suppression and remand for an addi-
tional hearing.

2. *Probable cause.* Probable cause to arrest exists when the
facts and circumstances in the arresting officer's knowledge,
and of which he has reasonably trustworthy information, are
sufficient to warrant a person of reasonable caution to believe
that an offense was or is about to be committed. *Common-
wealth* v. *Gullick*, 386 Mass. 278, 283 (1982). The tip, if it
could properly be relied upon, supplied the officer with rea-
son to believe that a crime (trafficking in cocaine) was being
committed at South Station. See *Draper* v. *United States*,
358 U.S. 307 (1959). In the absence of the tip, there was no
such probable cause. The crux of the case, therefore, is
whether the officer could properly rely upon the information
provided by the informant.

In order to be deemed reasonably trustworthy, information
provided by a confidential informant must satisfy the two-
pronged test first set forth in *Aguilar* v. *Texas*, 378 U.S. 108
(1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969),
and adopted by this court in *Commonwealth* v. *Upton*, 394
Mass. 363 (1985). The Commonwealth must (1) demon-
strate the basis of the informant's information and (2) put
forward sufficient indicia of veracity to justify probable
cause.

There was testimony in open court which, if believed,
would satisfy both prongs of the *Upton* test. The basis of the
informant's knowledge was revealed when the officer testified

in open court that the defendant Crawford had told the informant of the plan.

There was also sufficient testimony in open court to satisfy the veracity test. The veracity test may be satisfied by demonstrating the credibility of the informant. That credibility, in turn, may be established by showing that information provided in the past by this informant has proved to be accurate. See *Commonwealth* v. *Valdez*, 402 Mass. 65, 70-71 (1988). In this case, the officer testified that the informant had, in the past year, given information which led to the arrest and indictment of two unnamed persons and the seizure of over a kilogram of cocaine. In *Commonwealth* v. *Perez-Baez, ante* 43 (1991), we held that a prior tip regarding the possession of cocaine which leads to an arrest and a seizure of cocaine is sufficient to satisfy the veracity aspect of the test.

However, it is apparent from the record that the judge was not entirely convinced that the officer was being candid in his testimony in open court. The officer refused to reveal the names of the two individuals arrested pursuant to the informant's prior tip. The prosecutor suggested that the officer tell the judge the names of the individuals in-camera, so as not to compromise the informant. The officer did so and the judge was then apparently convinced that the officer was telling the truth. Later, the judge decided that the in-camera hearing was inappropriate and returned to his prehearing conclusion, that he was unconvinced by the trooper's statements concerning the informant's reliability.

The judge was correct in determining that the in-camera interview with the police officer, attended by neither the prosecutor nor defense counsel, was inappropriate. The Commonwealth bore the burden of proving to the judge that the evidence was seized in a lawful manner, and defense counsel should have been present at every stage of the prosecution's case.[2] The judge should not have conducted this hearing in

---

[2]This case differs from *Commonwealth* v. *Amral*, 407 Mass. 511 (1990), in which we prohibited defense attorneys from attending an in-camera hearing held to determine whether there was a sufficient preliminary showing of misstatement in the warrant affidavit to justify a hearing under

the absence of defense counsel.[3] The judge, therefore, properly did not rely upon the testimony obtained therein.

However, in the circumstances of this case, the judge should not have proceeded directly from a determination that the in-camera proceeding was improper to exclusion of the evidence. The stated goal of the exclusionary rule is to encourage police officers to conform their conduct to the dictates of the Constitution. *Commonwealth v. Amral*, 407 Mass. 511, 516 (1990). *Franks v. Delaware*, 438 U.S. 154, 165-166 (1978). The judge should have given the Commonwealth every opportunity to prove the existence of probable cause in a manner consistent with the defendant's rights and also without unnecessarily requiring the disclosure of the informant's identity.

The proper course of action in these circumstances is for the judge to conduct another recorded in-camera hearing, this time inviting the defense counsel and the prosecutor to attend. If, in the presence of the defendant's attorney, the officer reveals the information required to satisfy the judge, the evidence should not be suppressed. If the officer refuses so to testify, the judge may then suppress the evidence. This matter is to be remanded for a new hearing on this point.

3. *Search of the automobile.* The validity of the search of the automobile is dependent on the outcome of the new hearing. If the officer was not entitled to rely on the informant, the search was illegal.

---

*Franks v. Delaware*, 438 U.S. 154 (1978). Here, the Commonwealth has yet to satisfy its burden of convincing the judge that the warrantless search was supported by probable cause. In *Amral*, a case involving a search conducted pursuant to a warrant, the Commonwealth had already met its initial burden and the defendant was attempting to impugn the sworn statements in the affidavit. Because the defendant was not entitled to a hearing on the alleged misstatements without first making a substantial preliminary showing, the defendant had no right to have his attorney present at the in-camera hearing designed to determine whether that preliminary showing had been made.

[3] In making this determination, we rely neither upon the Sixth Amendment to the United States Constitution nor article 12 of the Massachusetts Declaration of Rights but rather on our general powers of supervision over lower courts.

Because we hold that a new hearing must be held, we remand this case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*