NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1626                                          Appeals Court

COMMONWEALTH  vs.  HECTOR GONZALEZ.


No. 14-P-1626.

Hampden.     December 4, 2015. - August 29, 2016.

Present:  Cohen, Trainor, & Katzmann, JJ.


Controlled Substances.  Constitutional Law, Search and seizure,
     Probable cause.  Search and Seizure, Probable cause.
     Probable Cause.


     Indictments found and returned in the Superior Court
Department on July 11, 2013.

     A pretrial motion to suppress evidence was heard by C.
Jeffrey Kinder, J.

     An application for leave to prosecute an interlocutory
appeal was allowed by Fernande R. V. Duffly, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.


     Thomas E. Robinson for the defendant.
     Bethany C. Lynch, Assistant District Attorney, for the
Commonwealth.


     KATZMANN, J.  In the instant appeal from the denial by a

Superior Court judge of the defendant's motion to suppress, the

defendant challenges the warrantless search of his person and

arrest based on information police received from a confidential informant.  A single justice of the Supreme Judicial Court allowed the defendant's application for leave to pursue an interlocutory appeal of the Superior Court's order and reported the matter to this court.  The primary issue posed by this appeal is whether the exclusionary rule precludes a judge from considering evidence of a prior incident in an unrelated case in evaluating the accuracy of a confidential informant's "track record" where that evidence was suppressed in the unrelated case after a finding by a different judge that the informant's veracity had not been adequately established.  On the record before us, we answer that question in the negative and affirm the order denying the motion to suppress.

Background.  We recite the facts as found by the motion judge after an evidentiary hearing.  On June 14, 2013, at approximately 7:40 P.M., Detective Edward Kalish, an experienced narcotics detective with the Springfield police department, received information from a confidential informant (CI) that, at that moment, a Hispanic male named Hector Gonzalez was in possession of a large quantity of heroin on Knox Street in Springfield.  The CI further stated that Gonzalez was wearing dark shorts, dark shoes, and a light blue basketball jersey bearing number "8" with the name "Bryant" on the back.  The CI said that Gonzalez was a passenger in a blue Honda automobile

bearing a specific Massachusetts license plate number. According to the CI, the vehicle was being operated by a white male.

The CI was known to Detective Kalish by name, address, Social Security number, and date of birth. At the time of the tip, Detective Kalish had been working with the CI for two to three months. The CI had previously provided information that had resulted in arrests in two other cases, neither of which had been resolved at the time of the tip. In one of the cases, a firearm had been seized from Hector Rosario. In a second case, the CI's cooperation had led to the seizure of a large amount of heroin and to arrests.

Detective Kalish immediately communicated the substance of the CI's tip to other members of his unit. Sergeant Stephen Kent responded to the area of Knox Street within five to six minutes of Detective Kalish's radio communication. There he observed a Hispanic male in a light blue basketball jersey bearing the number "8" with the name "Bryant" on the back. The Hispanic male, later identified as the defendant, left a residence on Knox Street and entered the passenger side of a blue Honda automobile bearing the same Massachusetts license plate number as the CI had reported. The driver of that vehicle was a white male.

Sergeant Kent communicated with other members of his unit by radio that he had observed the Hispanic male described by the CI entering the blue Honda on Knox Street. Thereafter he followed the vehicle, but did not participate in the stop. Detective Gregg Bigda responded to Knox Street at the same time, observed the blue Honda, and followed it to the intersection of Dickinson and Euclid Streets, where the blue Honda stopped without being directed to do so by law enforcement officers. Detective Bigda stopped his unmarked vehicle beside the blue Honda, got out, approached the passenger's side of the Honda, and removed the defendant. Other police vehicles blocked the Honda's path of travel. Two other officers searched the defendant's person and seized ninety-seven bags of heroin and five bags of cocaine from his pants pockets. The defendant was arrested and transported to the police station, where an inventory of his property revealed $499 in United States currency.

Citing Commonwealth v. Skea, 18 Mass. App. Ct. 685, 700 (1984), and implicitly determining that the defendant was not under arrest until some point after he had been removed from the vehicle, the motion judge concluded that the officers had probable cause to search the defendant to prevent the destruction of evidence.

Discussion.  "In reviewing a denial of a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error, but conduct an independent review of the judge's ultimate findings and conclusions of law." Commonwealth v. Washington, 449 Mass. 476, 480 (2007).  Because, as we discuss below, we conclude that the police had probable cause to arrest the defendant at the time that he was removed from the Honda, we need not determine whether the police formally placed him under arrest before or after the search, as the search could be justified either way as a valid search incident to arrest. See id. at 481, 482 ("A search incident to an arrest is a limited exception to the warrant requirement" but "a suspect need not be formally under arrest at the precise moment of a search incident to an arrest; the search may precede the formal arrest so long as probable cause exists independent of the results of the search"); Skea, supra at 696 n.15 ("If a police officer has probable cause to believe a suspect on the street is carrying, say, heroin, it is clear from Rawlings [v. Kentucky, 448 U.S. 98, 111 (1980),] that he is not required first to arrest, then to search.  He may instead begin with the search, and, on finding the heroin, arrest" [citation omitted]).

"Where an unnamed informant's tip is relied on by the police as supplying probable cause to arrest and to search, art. 14 [of the Massachusetts Declaration of Rights] requires that

the information satisfy the two-pronged standard set forth in
Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United
States, 393 U.S. 410 (1969)."  Commonwealth v. Welch, 420 Mass.
646, 650 (1995).  To satisfy this standard, "[t]he Commonwealth
must (1) demonstrate the basis of the informant's information
and (2) put forward sufficient indicia of veracity to justify
probable cause."  Commonwealth v. Crawford, 410 Mass. 75, 78
(1991).  "[A]n informant's detailed tip, plus independent police
corroboration of those details, can compensate for deficiencies
in either or both prongs of the Aguilar-Spinelli standard and
thus satisfy the art. 14 probable cause requirement."  Welch,
supra at 651.  "[T]he Aguilar-Spinelli test is not to be applied
'hypertechnically.'  Rather, we consider whether, taken as a
whole and read in a commonsense fashion, the [hearing evidence]
adequately demonstrates that the informant has provided reliable
information."  Commonwealth v. Alfonso A., 438 Mass. 372, 375
(2003) (citation omitted).

     1.  Basis of knowledge.  The specific detail concerning the
defendant's exact location, ethnicity, clothing, and means of
transportation provided by the CI here gives rise to the
reasonable inference that the basis of his[1] knowledge was
personal observation.  That is, even though Detective Kalish did

_____

     [1] Our use of masculine pronouns should not be considered any
indication of the CI's gender, about which we have no
information.

not explicitly testify to the CI's basis of knowledge, "[i]n context, it is apparent that the informant was reporting his own observation" where "the level of detail provided is consistent with personal observation, not mere recitation of a casual rumor." Id. at 374. The CI described the clothing the defendant was wearing and the make and license plate of the automobile in which he would be a passenger as well as the race of its driver. In addition, the CI's information was current as of the moment he was relaying it. "The promptness of the information, the specificity of the observations, and the particularity of the detail as to location permitted the inference that the informant saw the drugs at the precise place stated. . . . This satisfies the basis of knowledge prong." Commonwealth v. Alvarez, 422 Mass. 198, 207 (1996). See Welch, supra at 651-652 ("From the level of detail, it could be inferred that the informant had direct knowledge of the defendant and of the criminal activity that was to take place on that evening"); Commonwealth v. Mendes, 463 Mass. 353, 364-365 (2012).

Moreover, where Sergeant Kent's observations confirmed the detail provided by the CI, "[a]ny deficiency in ascertaining the informant's basis of knowledge from the tip alone was adequately compensated for by independent police corroboration of the

details of the tip." Welch, supra at 652. The basis of knowledge prong was satisfied.

2. Veracity. The Commonwealth introduced sufficient evidence of the CI's reliability to satisfy the veracity prong. First, Detective Kalish's past experiences with the CI demonstrated that the CI had provided reliable and accurate information in the past leading to arrests and seizures of narcotics and a firearm.[2] "The veracity test may be satisfied by demonstrating the credibility of the informant. That credibility, in turn, may be established by showing that information provided in the past by this informant has proved to be accurate." Crawford, 410 Mass. at 79. This is especially true where, as here, previous accurate tips have led to the seizure of illegal narcotics. Mendes, supra at 365-366; Commonwealth v. Perez-Baez, 410 Mass. 43, 45-56 (1991).

Second, as noted above, the narcotics officers here were able to independently corroborate the detail that the CI had provided. "[D]etail, by itself, does not ordinarily suffice to establish reliability, [but] it remains a factor in the over-all assessment of . . . reliability . . . [and] police corroboration of that detail is a strong indicator of reliability." Alfonso A., 438 Mass. at 376-377 (citations and footnote omitted).

---

[2] As mentioned, at the time of the tip, both prosecutions arising from the CI's previous tips were ongoing.

Finally, the CI was not anonymous. "Although the informant was not named" by Detective Kalish, "he was not an untraceable, unknown source." Id. at 375. As found by the motion judge, the CI was known to Detective Kalish by name, address, Social Security number, and date of birth. "Although police knowledge of the informant's 'identity' and 'whereabouts' would not be adequate standing alone to confirm the informant's reliability, it is a factor that weighs in favor of reliability." Id. at 376. See Commonwealth v. Va Meng Joe, 425 Mass. 99, 103-104 (1997) (informant reachable by authorities); Mendes, supra.

Based on the accuracy of the CI's prior tips, police corroboration of the detail of his tip in this case, and police knowledge of his identity and whereabouts, the veracity prong was satisfied.

3. Consideration of previously suppressed evidence in assessing veracity. The defendant's primary contention on appeal is that the motion judge erred in finding that the reliability of the CI was established by prior cooperation resulting in "arrests in two other cases and the seizure of contraband in each instance." In so concluding, the motion judge took judicial notice that in one of those cases, which named Hector Rosario as the defendant, the motion to suppress

had been successful and the case had been dismissed.[3]  In that case, a different motion judge found that the veracity prong was not satisfied, and therefore probable cause was lacking.  There, the CI had not provided predictive information that was "highly specific" or "relate[d] to non-obvious and non-innocent activities" for the police to corroborate.  Nor had the CI "provided information that had previously led to convictions, seizures of contraband, or arrests."  Although the CI's tip led to the recovery of a gun from Rosario, the evidence was suppressed.[4]

The defendant contends that the motion judge's decision in the Rosario matter indicates that the CI is not reliable and that the Commonwealth should not be permitted to rely on the CI's involvement in that case to bolster his reliability here where the evidence to which he led police in the Rosario matter was ultimately suppressed.  He contends that the consideration by the motion judge of the suppressed evidence subverts the exclusionary rule.  We disagree.

---

[3] The second case had not yet been resolved at the time of the motion hearing.

[4] Though it did not take an interlocutory appeal, the Commonwealth has not conceded that the Rosario matter was correctly decided.  See Commonwealth v. Stephens, 451 Mass. 370, 378 (2008) ("[T]he Commonwealth may choose not to take an interlocutory appeal from an incorrect decision on a motion to suppress").  The merits of that suppression decision are not before us and we do not reach them.

We turn first to the defendant's suggestion that the motion judge's conclusion in the Rosario matter that the Commonwealth had failed to establish the CI's reliability is equivalent to a finding with preclusive effect here that the CI is not reliable. This contention is unavailing. One judge's determination regarding probable cause based on a CI's tip in a different case at a different time is not determinative of the existence vel non of probable cause, or the CI's reliability, in a case presenting different facts and circumstances.[5] Indeed, as the defendant acknowledges, in Massachusetts, the allowance of a motion to suppress in one defendant's case does not even collaterally estop the Commonwealth from relitigating the suppression issue in the codefendant's case. See Commonwealth v. Stephens, 451 Mass. 370, 375-380 (2008). The defendant's argument fails for a similar reason.

Relatedly, the defendant claims that in determining the CI's veracity here, the exclusionary rule should preclude the motion judge from considering the evidence that had been suppressed in the unrelated Rosario matter. We are not persuaded by this contention. "The suppression of evidence under the exclusionary rule is a 'judicially created remedy,'

---

[5] For example, in the Rosario matter, the motion judge found that the "CI had not provided information that had previously led to convictions, seizures of contraband, or arrests." The CI had a far more favorable track record by the time he provided information in the instant case.

whose 'prime purpose is to deter future unlawful police conduct.'" Commonwealth v. Lora, 451 Mass. 425, 438 (2008), quoting from United States v. Calandra, 414 U.S. 338, 347, 348 (1974). See Commonwealth v. Wilkerson, 436 Mass. 137, 142 (2002) ("The interest in deterring unlawful police conduct . . . is the foundation of the exclusionary rule"); Commonwealth v. Lunden, 87 Mass. App. Ct. 823, 827 (2015). Besides the "'primary justification for the exclusionary rule' [of] deterrence of unconstitutional police conduct," Lora, supra, quoting from Stone v. Powell, 428 U.S. 465, 486 (1976), "its purpose is to . . . preserve judicial integrity by dissociating courts from unlawful conduct." Commonwealth v. Nelson, 460 Mass. 564, 570-571 (2011). See Commonwealth v. Brown, 456 Mass. 708, 715 (2010), and cases cited. See also United States v. Leon, 468 U.S. 897, 920-921 (1984). "Rigid adherence to a rule of exclusion is unnecessary in situations where these purposes are not furthered." Nelson, supra, citing Brown, supra.

We therefore turn to the question whether the "stated goal of the exclusionary rule . . . to encourage police officers to conform their conduct to the dictates of the Constitution," Crawford, 410 Mass. at 80, militates in favor of prohibiting consideration of previously suppressed evidence when assessing an informant's veracity under the Aguilar-Spinelli test in an

unrelated case.[6] We conclude that it does not, at least not in a case such as this where the evidence obtained from the prior tip had not yet been suppressed at the time the officers relied on it as part of the CI's reliability track record and where there is no indication that the reasons for its ultimate suppression impugn the accuracy or credibility of the CI.

The defendant points to no case that precludes a judge from considering evidence indicative of the accuracy of a CI's track record where, in an unrelated case and due to a judicial finding that the CI's veracity had not been adequately established, that evidence had been suppressed. We have previously referred to United States Supreme Court Justice Powell's "balancing test for use in determining whether the exclusionary rule should apply to the use of evidence other than in the prosecution of the case-

---

[6] We note that the applicability of the Aguilar-Spinelli test is a matter of State law, as it is no longer the standard under Federal constitutional law. See Commonwealth v. Upton, 394 Mass. 363, 373-374 (1985). Consequently, where the Rosario matter was decided by application of the Aguilar-Spinelli test as a matter of State constitutional law, the resulting suppression was required by State, not Federal law. In Upton, the Supreme Judicial Court explained that its application of the exclusionary rule where law enforcement fails to satisfy the Aguilar-Spinelli test as required by art. 14 of the Massachusetts Declaration of Rights was dictated by the State warrant statute, G. L. c. 276, § 2B, and not by art. 14 itself. Upton, supra at 370, 374-376. However, subsequent cases applied the exclusionary rule where the Commonwealth failed to satisfy the Aguilar-Spinelli test even where no warrant was involved. See, e.g., Commonwealth v. Borges, 395 Mass. 788, 789-790, 794-795 (1985). The parties have not suggested that the outcome here depends on that basis (Federal or State constitutional law or State statute) for application of the exclusionary rule.

in-chief against the victim of the search and seizure" and his observation that "the need for deterrence and hence the rationale for excluding the evidence are strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search." Boston v. Ditson, 4 Mass. App. Ct. 323, 331, 332 (1976), quoting from United States v. Calandra, 414 U.S. 338, 348 (1974). As a result of the shortcomings specific to the Rosario matter (as found by the motion judge in that case), the judge suppressed the evidence as it applied to Rosario. Thus the "victim of that illegality" -- Rosario -- was not punished, and the police did not gain an advantage by "illegal" conduct. Selectmen of Framingham v. Municipal Ct. of Boston, 373 Mass. 783, 787 (1977). The concern for protecting the victim of that search (Rosario) is not implicated in the defendant's case,[7] and any

---

[7] For the same reason, cases such as Commonwealth v. White, 374 Mass. 132, 138-139 (1977), aff'd by an equally divided court, 439 U.S. 280 (1978), and Alvarez, 422 Mass. at 207 n.6 -- where the Commonwealth relied on subsequently suppressed statements in obtaining search warrants for evidence to be used against the same defendants who uttered the statements -- are inapposite. Those cases also deal with suppression based on Miranda violations, which raise different concerns. As the White court noted, "Evidence obtained in violation of the guaranty against unreasonable searches and seizures is more often than not reliable, probative evidence. While evidence obtained in violation of the Miranda guidelines may be similarly probative and reliable, there is a far more significant danger that it will not be so." White, supra at 139 (citations omitted).

"incremental deterrent effect" would be "speculative and undoubtedly minimal."[8]  Calandra, supra at 351-352.  Therefore, at the time the motion judge reviewed the CI's information in the instant case, it was proper for him to consider the fact that the police had recovered a gun from Rosario as the CI had predicted.

In this regard, it should also be noted that the defendant in this case was arrested on June 14, 2013, based on information provided by the CI and corroborated by the police.  The judge in the unrelated case involving Rosario did not suppress the evidence in that case until March 28, 2014.  Therefore, at the time of the defendant's arrest, the officers had no reason to believe that they could not rely, in part, on the seizure of a firearm and the accompanying arrest of Rosario in establishing the CI's veracity.  Since the officers were unaware that a

---

[8] It is unlikely and speculative that police will engage in unlawful searches to obtain evidence of illegality that, though subject to suppression as against the individual from whom the evidence was seized, may bolster the reliability of an informant in separate and unrelated investigations that may or may not ever materialize.  Different considerations could apply where the suppressed evidence is derived from an investigation that is in some way related to the defendant seeking exclusion.  "For example, '[u]nconstitutional [police conduct directed at] small fish intentionally undertaken in order to catch big ones may have to be discouraged by allowing the big fish, when caught, to rely on the violation of the rights of the small fish, as to whose prosecution the police are relatively indifferent.'"  Commonwealth v. Vacher, 469 Mass. 425, 435 (2014), quoting from Commonwealth v. Manning, 406 Mass. 425, 429 (1990).  The defendant does not contend that Rosario's case is in any way connected with his.

motion judge would later suppress the evidence as to Rosario, it is unreasonable to conclude that the officers even knew that their conduct would be deemed constitutionally deficient, let alone that they had an incentive to "take advantage of [their] own lawbreaking" in that case. Selectmen of Framingham, supra.

The defendant's claim based on judicial integrity fails for similar reasons. As has been stated, besides deterrence of unconstitutional police conduct, one of the stated purposes of the exclusionary rule, albeit not a foundational or primary one, is the preservation of judicial integrity by dissociating courts from unlawful conduct,[9] see, e.g., Nelson, 460 Mass. at 570-571, and "avoid[ing] judicial participation in the use of evidence obtained in violation of a defendant's constitutional rights." Commonwealth v. Webster, 75 Mass. App. Ct. 247, 258 (2009). But here judicial integrity is not implicated as it was in Selectmen of Framingham, because the Commonwealth is not seeking "to take

---

[9] In Commonwealth v. Olsen, 405 Mass. 491, 495 (1989), the Supreme Judicial Court, in a case involving a probation revocation proceeding, noted that "[a] few dissenting opinions decry the use of illegally obtained evidence in any proceeding as a matter of judicial integrity," but that none of the cases excluding illegally obtained evidence actually appear to explicitly rely on "judicial integrity." To the extent that judicial integrity was a concern, the Olsen court found it "adequately served" by excluding the illegally obtained evidence at the defendant's trial without requiring exclusion of that evidence from the defendant's probation revocation hearing. Ibid. See Commonwealth v. Goewey, 69 Mass. App. Ct. 429, 436 n.6 (2007). See generally Bloom and Fentin, "A More Majestic Conception": The Importance of Judicial Integrity in Preserving the Exclusionary Rule, 13 U. Pa. J. Const. L. 47 (2010).

advantage of its own lawbreaking to punish the victim of that illegality." Selectmen of Framingham, 373 Mass. at 787. Again, the defendant here was not a victim of any illegality by the officers in the Rosario matter. Nor, though the defendant suggests otherwise, does this case raise the specter of using suppressed evidence to buttress a fabricated, nonexistent informant, such that a fraud could be perpetrated on the court and its integrity threatened. Judicial integrity was adequately served by the exclusion of the evidence at issue from Rosario's trial. Cf. Brown, 456 Mass. at 715 ("Judicial integrity . . . is hardly threatened when evidence properly obtained under Federal law, in a federally run investigation, is admitted as evidence in State courts").[10]

---

[10] Even if the motion judge erred in considering the evidence from the Rosario matter and that evidence were excised, sufficient information remained to establish the CI's veracity under the Aguilar-Spinelli test based on the CI's past reliability as to the remaining matter and police corroboration of his tip and knowledge of his identity and whereabouts. The CI had provided information in the past that led to an arrest and the seizure of "a large amount of heroin." Even if a single prior instance of reliability was insufficient to establish the CI's veracity in this case, the officers also corroborated specific details of his tip. See Lyons, 409 Mass. at 19. As already stated above, the defendant's location, clothing, and actions exactly matched the specific information that the CI provided. See Commonwealth v. Valdez, 402 Mass. 65, 70-71 (1988) (after erroneous information excised from search warrant affidavit, remaining information sufficient to support issuance of search warrant on finding of probable cause); Commonwealth v. DeJesus, 439 Mass. 616, 625-626 (2003) (where improper information removed from search warrant application, remainder

Conclusion.  The motion judge properly denied the
defendant's motion to suppress.

Order denying motion to
suppress affirmed.

---

of affidavit sufficient to establish probable cause to search);
Commonwealth v. Streeter, 71 Mass. App. Ct. 430, 440-441 (2008).