A judge of the Superior Court allowed the defendant's motion to suppress illegal drugs and other items seized during the execution of a search warrant. The Commonwealth appeals, arguing that the affidavit filed with the application for the warrant recited information that sufficiently established probable cause to believe that evidence of drug dealing would be found in the defendant's residence. We agree, and reverse.
Background.[2] On April 10, 2016, Detective Bruce Nicely, assigned to the organized crime intelligence bureau of the New Bedford police department, applied for a search warrant for the defendant's residence at 966 County Street, New Bedford. The warrant issued the same day, authorizing a search for, among other things, controlled substances, specifically marijuana, and all tools and equipment used in drug manufacturing or distribution. Nicely's affidavit in support of his application recited that he had considerable experience in drug investigations.[3] He then recounted information he had received from Detective Sergeant Justin Kagan, who had received information from a "confidential and reliable informant." Kagan had been speaking with the informant over a period of sixty days, up until the time that the application was filed. He knew the informant's name and address and knew that the informant was a drug user, who was familiar with street level sales of illegal drugs.
In the past, the informant had provided information that led to a search warrant and subsequent seizure of illegal drugs, drug paraphernalia, and cash at a named address.[4] A named individual was arrested, presumably as a result of that seizure. The informant told Kagan that he had purchased marijuana "on multiple occasions" at the defendant's residence from an individual he described as "a short Hispanic male with short black hair and a thin build."[5]
Kagan watched the defendant's address ("conducted surveillance") and observed an individual matching the informant's description leave the residence by the rear door. City records revealed that an individual named Roy Sabanero lived at that address, and Kagan concluded from a booking photograph of Roy Sabanero that Sabanero was the man he had seen leave the building. A police report from March 5, 2016, listed the same address as Sabanero's and revealed that a quantity of cocaine and a quantity of marijuana were seized from a vehicle then operated by Sabanero. The informant also identified Sabanero from the booking photograph as the person from whom he purchased the marijuana. Sabanero's board of probation record listed twenty-three adult arraignments, including six for drug-related offenses, including distribution and possession with intent to distribute. The informant also told Kagan that the informant had bought marijuana from Sabanero in the rear hallway of the target residence within seventy-two hours of the search warrant application; police surveillance produced observations of the defendant going in and out of that residence and, on one occasion, conducting what Kagan believed, based on his experience and training, to be "a hand-to-hand [drug] transaction" after leaving the residence.
Discussion. "We confine our examination of the sufficiency of a search warrant application to the 'four corners of the affidavit.' " Commonwealth v. Mendes, 463 Mass. 353, 364 (2012) (citation omitted). "The facts contained in the [search warrant] affidavit, and the reasonable inferences therefrom, must demonstrate probable cause to believe that evidence of the crime will be found in the place to be searched." Commonwealth v. Tapia, 463 Mass. 721, 725 (2012) (citation omitted). "This probable cause inquiry requires a nexus between the items to be seized and the place to be searched." Ibid. (citation omitted). "Because a determination of probable cause is a conclusion of law, we review a search warrant affidavit de novo." Commonwealth v. Foster, 471 Mass. 236, 242 (2015).
The motion judge stated that the "affidavit rests critically upon the uncorroborated -- and therefore unreliable - - statements of a confidential informant ... and the limited observations of Kagan [and concluded,] [t]he affidavit in this case does not present facts that enable this kind of conclusion [that is, "that drugs, or the instrumentalities of their trade will be found on the premises"]." We disagree.
In Commonwealth v. Upton, the Supreme Judicial Court
"conclude[d] ... that the principles developed under Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969), if not applied hypertechnically, provide [an] appropriate structure for probable cause inquiries under art. 14. Under the Aguilar-Spinelli standard, if an affidavit is based on information from an unknown informant, the magistrate must 'be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was 'credible' or his information 'reliable' (the veracity test). Aguilar v. Texas, supra at 114. If the informant's tip does not satisfy each aspect of the Aguilar test, other allegations in the affidavit that corroborate the information could support a finding of probable cause. Spinelli v. United States, supra at 415.
"Each prong of the Aguilar-Spinelli test -- the basis of knowledge and the veracity of the informant -- presents an independently important consideration. We have said that independent police corroboration can make up for deficiencies in either or both prongs of the Aguilar-Spinelli test. We reiterate today, however, that each element of the test must be separately considered and satisfied or supplemented in some way."
Commonwealth v. Upton, 394 Mass. 363, 374-376 (1985), quoting from Commonwealth v. Upton, 390 Mass. 562, 566, 568 (1983) (emphasis supplied). That is, if there are facts showing that the informant is reliable and that he has a basis of knowledge for what he reports, corroboration is not necessary. See Commonwealth v. Gonzalez, 90 Mass. App. Ct. 100, 103 (2016) (where, as here, "an unnamed informant's tip is relied on by the police as supplying probable cause to arrest and to search, art. 14 [of the Massachusetts Declaration of Rights] requires that the information satisfy the two-pronged standard set forth in Aguilar v. Texas, 378 U.S. 108 [1964], and Spinelli v. United States, 393 U.S. 410 [1969]").
In the case before us, we are satisfied that the search warrant affidavit provided sufficient information to satisfy each of the Aguilar-Spinelli prongs and therefore provided probable cause to believe that evidence of illegal drug dealing would be found in the defendant's second-floor apartment. In reviewing whether the standard is met, "we consider whether, taken as a whole and read in a commonsense fashion, the [hearing evidence] adequately demonstrates that the informant has provided reliable information." Gonzales, 90 Mass. App. Ct. (citation omitted).
First, the informant had an adequate basis of knowledge by virtue of the participation in the defendant's drug dealings, and by providing a clear description of the defendant, and definitively identifying him after seeing his booking photograph. The informant also offered a detailed account of how, on several occasions, the informant purchased marijuana from the defendant outside his second-floor apartment at 966 County Street. See Mendes, 463 Mass. at 365 ("The level of detail found in [the] informant['s] description[ ] is consistent with the kind of firsthand knowledge through personal observation that has repeatedly been held to satisfy the basis of knowledge prong"). Moreover, the information was not stale, as within seventy-two hours of the search warrant application, the informant told Kagan that the defendant sold the informant drugs inside the building. Thus, the basis of knowledge prong was satisfied.
Next, the affidavit satisfied the veracity prong by providing proof of the informant's past reliability. Kagan's past experiences with the informant demonstrated that the informant had provided reliable and accurate information leading to an arrest and seizure of drugs and contraband. "The veracity test may be satisfied by demonstrating the credibility of the informant. That credibility, in turn, may be established by showing that information provided in the past by this informant has proved to be accurate." Gonzalez, 90 Mass. App. Ct. at 104 (citation omitted). This is especially true where, as here, previous accurate tips have led to the seizure of illegal narcotics. See Mendes, 463 Mass. at 365-366 ("As the defendants concede, [confidential informant B's (CSB) ] reliability was established through previous instances where CSB's information led to the confiscation of illegal narcotics. With respect to [confidential informant A,] 'the motion judge relied on the extent of detail in the informant's information, police corroboration of a portion of that detail, and police knowledge of the identity and whereabouts of the informant' " [citations omitted] ). Having these principles in mind, we are satisfied that the informant's information here satisfied the requirements of the Aguilar-Spinelli test. See Commonwealth v. Monteiro, 93 Mass. App. Ct. 478, 481 (2018), reiterating the Supreme Judicial Court's language in Commonwealth v. Upton, supra.
The informant's information here also was corroborated in significant ways, so that, even if it was not sufficient by itself, the affidavit as a whole provided probable cause for the search. "[A]n informant's detailed tip, plus independent police corroboration of those details, can compensate for deficiencies in either or both prongs of the Aguilar-Spinelli standard and thus satisfy the art. 14 probable cause requirement." Gonzalez, 90 Mass. App. Ct. at 103 (citation omitted).
Kagan independently corroborated the details the informant provided through his investigation of relevant records and surveillance of the defendant leaving from, and returning to, the target residence on multiple occasions; on one specific occasion, Kagan observed the defendant leave the residence and conduct a suspected hand-to-hand drug transaction a short distance from the residence. "[D]etail, by itself, does not ordinarily suffice to establish reliability, [but] it remains a factor in the over-all assessment of ... reliability ... [and] police corroboration of that detail is a strong indicator of reliability." Commonwealth v. Alfonso A., 438 Mass. 372, 376-377 (2003). Although not specifically named in the affidavit, the informant was known to Kagan, providing "a factor that weighs in favor of reliability." Id. at 376. Taken together, the veracity prong was satisfied.
"In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." Foster, 471 Mass. at 242 (citations omitted). A reasonable reading of Kagan's affidavit indicates that the recited facts were sufficient for the issuing judge or magistrate to find probable cause that the defendant was illegally selling marijuana, and that, due to the details provided by the informant of the drug transactions occurring in the hallway outside of the defendant's apartment, it was a fair inference that the marijuana, along with evidence that it was being distributed illegally, would be located inside his residence at 966 County Street.
Order allowing motion to suppress reversed.

We take the background from the warrant itself, along with the supporting application and affidavit.

During the course of Detective Nicely's tenure with the organized crime intelligence bureau, he has conducted several drug investigations resulting in arrests; he has conducted undercover surveillance, executed numerous search warrants, and cultivated numerous confidential informants; he has participated in narcotics training at the policy academy, and is certified in drug field testing. Through his training and experience, he is familiar with the preparation, packaging, and street value of various controlled substances, and is familiar with common methods of distributing these drugs.

According to the affidavit for the warrant, the informant's information led to the seizure of "approximately 19 grams of heroin. 2.4 grams of cocaine, packaging materials, digital scale and $1,631.00 in U.S. [c]urrency were seized."

The informant told Kagan that he would first call the defendant at an identified telephone number and order the quantity he desired. He then would go to the residence, into the back hallway of the multifamily dwelling, and purchase the marijuana from the defendant outside the rear door to the second floor apartment.