NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-537
23-P-540

COMMONWEALTH

vs.

JOHN T. MASON (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendants have been charged with one count each of possession of a class A substance (fentanyl) with intent to distribute based on evidence seized at their shared residence during the execution of a search warrant. This is the defendants' joint interlocutory appeal from the denial of their motions to suppress.[2] On appeal, they claim that the affidavit

---

[1] Commonwealth vs. Joseph M. Marciszka, Jr.

[2] A single justice of the Supreme Judicial Court allowed the defendants' applications, pursuant to Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017), for leave to pursue an interlocutory appeal in the Appeals Court and directed that their appeals be paired.

supporting the search warrant failed to establish probable cause to justify the search of their residence.  We affirm.

"When reviewing the sufficiency of a warrant application, our 'inquiry begins and ends with the "four corners of the affidavit" that supported it.'"  Commonwealth v. Hayes, 102 Mass. App. Ct. 455, 461 (2023), quoting Commonwealth v. Escalera, 462 Mass. 636, 638 (2012).  "[T]he affidavit should be read as a whole, not parsed, severed, and subjected to hypercritical analysis."  Commonwealth v. Blake, 413 Mass. 823, 827 (1992).  When determining whether the affidavit supported a finding of probable cause, "[w]e give considerable deference to the magistrate's determination" (citation omitted).  Commonwealth v. Andre-Fields, 98 Mass. App. Ct. 475, 486 (2020).  Our review is de novo, and we conduct it "in a commonsense and realistic manner."  Commonwealth v. Perkins, 478 Mass. 97, 102 (2017).

The defendants claim that based on Commonwealth v. Ponte, 97 Mass. App. Ct. 78 (2020), and Commonwealth v. Costa, 97 Mass. App. Ct. 902 (2020), the motions to suppress should have been allowed because in cases involving controlled buys in large multiunit buildings, it is required that the police observe the confidential informant (CI) entering a specific apartment or

2

provide details of the layout of the building and an explanation why such observation was impossible or infeasible.  We disagree.

In Ponte, 97 Mass. App. Ct. at 86, we held that when a showing of probable cause is supported by a controlled buy, police observation of a CI entering and exiting a large multiunit building containing a large number of individual apartments on multiple floors, without observing which apartment the CI approached to complete the purchase, does not sufficiently corroborate the CI's veracity.  We indicated that "more" was required to establish probable cause.  Ponte, supra at 86.

While this case is similar to Ponte in some respects, here the affidavit in support of the search warrant contained "more" information and corroboration to meet the low threshold of probable cause.  As an initial matter, police were able to corroborate that the defendants lived together at 81 High Street, apartment 12, as the CI had reported.[3]  The Registry of Motor Vehicles and the Department of Criminal Justice Information Services (CJIS) database listed both defendants' addresses as that apartment.  The investigation also revealed

---

[3] 81 High Street is a three story, multifamily apartment and condominium complex comprised of thirty units.  Apartment 12 is on the second floor.  There are four balconies visible from the front side, two on each side of the front door.

that defendant John Mason owned the same car identified by the CI, which is registered to address of the target apartment. The CI provided a 978 phone number for Mason, which a police database corroborated belonged to Mason. Finally, contrary to the defendants' claim that the police only corroborated innocent details of the CI's tip, the Amesbury Police Department had received complaints from citizens indicating that two males residing in apartment 12 were distributing fentanyl and heroin from that apartment. Most importantly, an identified individual, i.e., not anonymous, reported to the police that the defendants, whom he knew by their names, were "dealing," presumably narcotics, to numerous people from apartment 12 throughout the day.

Article 14 of the Massachusetts Declaration of Rights requires application of the two-prong Aguilar-Spinelli test[4] to ensure that an affidavit based on information obtained from an informant establishes the informant's basis of knowledge and veracity. See Commonwealth v. Arias, 481 Mass. 604, 618 (2019). Relative to the CI's basis of knowledge here, as a result of the controlled buys, the CI reported firsthand knowledge of buying fentanyl from Mason in apartment 12 as recently as a week before

_____

[4] See Spinelli v. United States, 393 U.S. 410, 415 (1969); Aguilar v. Texas, 378 U.S. 108, 114 (1964).

4

the search warrant issued.  See Commonwealth v. Desper, 419

Mass. 163, 166 (1994).  Also, the CI relayed the information

regarding these purchases to the police officer/affiant right

after making them.  See Commonwealth v. Alvarez, 422 Mass. 198,

207 (1996).  Therefore, as in Ponte, the remaining issue is

whether the CI met the veracity test.  Ponte, 97 Mass. App. Ct.

at 81.

Relative to veracity, the CI did not have an established

history of providing information that led to arrests and

seizures of narcotics, or that which led to convictions.  See

Commonwealth v. Luce, 34 Mass. App. Ct. 105, 108 (1993) ("most

common indicator of 'veracity[]' [is] a history of dispensing

information to the government which led to convictions or

seizure of narcotics").[5]  However, a supervised controlled buy

can compensate for any deficiencies in a CI's basis of knowledge

or veracity and provide the necessary linkage between suspected

---

[5] The defendants properly note that the affiant's naked
assertion that the CI was "reliable" is insufficient to
establish his veracity.  See Spinelli, 393 U.S. at 416;
Commonwealth v. Rojas, 403 Mass. 483, 486 (1988).  To press the
opposite point, the Commonwealth relies on Commonwealth v.
Gonzalez, 90 Mass. App. Ct. 100, 104 (2016), to state that an
informant's veracity can be established "by showing that
information provided in the past by this informant has proved to
be accurate" (quotations and citation omitted).  However, in
Gonzalez, the information the informant provided in the past led
to the seizure of narcotics and a firearm.  Id.  Here, the
affidavit noted nothing of the kind.

drug-dealing activities and the defendants.  See Commonwealth v.

Valdez, 402 Mass. 65, 71 (1988).

While the motion judge distinguished Ponte's one controlled

buy with the three that occurred here, which is not without

moment, those extra buys do not, by themselves, establish

probable cause.  Here, as noted above, there was considerably

"more" information, and several distinguishing factors, that set

this case apart from Ponte, which provided the necessary

corroboration to establish the CI's veracity for purposes of the

Aguilar-Spinelli test.

Here, on three occasions, the police used the CI to make

controlled buys of fentanyl from Mason at apartment 12.  Each

time, in the presence of the affiant, the CI texted Mason and

arranged to buy the fentanyl, and Mason "instructed" the CI to

"come to [Mason's] residence."  The phone number that the CI

would text to arrange the narcotic purchase was the same 978

number the police had corroborated belonged to Mason.  After a

search of his person and car, and with money provided by police,

the CI, under police surveillance, drove to 81 High Street.  The

affiant saw the CI park in the complex's parking lot and enter

the front door of the building.  On each occasion, police saw

the CI leave the building after about one minute, get into his

car, and drive to a predetermined location for debriefing.

6

The CI described to the affiant after each controlled buy that the CI would be buzzed in the front door and walk up a few steps, where the CI would be met by Mason at the door of apartment 12. The CI would give cash to Mason, and Mason would give the CI an amount of "suspected fentanyl" commensurate with the amount of cash provided. It is noteworthy that after the first controlled buy, the affiant saw Mason smoking on Apartment 12's balcony after the CI left the parking lot.

Contrary to the defendants' claim, there are distinguishing factors that aided in establishing the CI's veracity sufficient to overcome the absence of direct police observation of the CI inside the building entering or leaving apartment 12. Unlike in Ponte or Costa, there were citizen complaints to the Amesbury Police "regarding heroin/fentanyl distribution" at 81 High Street. See Commonwealth v. Figueroa, 74 Mass. App. Ct. 784, 789 (2009) (citizen complaints about heavy traffic, "consistent with drug activity," at target location shored up defects in informant's reliability).

Furthermore, and more importantly, a person who revealed his or her identity to the Amesbury police "reported that there were two male residents in Apartment 12," identified as the defendants, "who were dealing to numerous people throughout the day," causing "constant traffic" to and from that apartment.

Contrary to the defendants' claim, this type of tip carries with it a heightened indicium of reliability, corroborates the CI's tip, and further supports the magistrate's finding of probable cause.  See Commonwealth v. Bakoian, 412 Mass. 295, 301 (1992), quoting Commonwealth v. Atchue, 393 Mass. 343, 347 (1984) (identification of informant to "police strengthened his or her credibility and 'carrie[d] with it indicia of reliability of the informant'").

Also, unlike Ponte or Costa, the police saw Mason on the balcony immediately after the first controlled buy, demonstrating that Mason was home at the time.  Moreover, this lends credence the CI's report that sometimes he had purchased drugs directly from Mason on the balcony.  See Commonwealth v. Parapar, 404 Mass. 319, 323 (1989) (informant's tip corroborated by police surveillance).

In establishing probable cause, "certainty is not required."  Figueroa, 74 Mass. App. Ct. at 788.  While it would have been better if the affidavit had set forth why the investigation or surveillance would have been jeopardized if the police went on the second floor to directly observe the CI go to apartment 12, an imperfect controlled buy does not necessarily render information obtained from an informant unreliable.  See Commonwealth v. Monteiro, 93 Mass. App. Ct. 478, 483 (2018).

8

See also <u>Commonwealth</u> v. <u>Warren</u>, 418 Mass. 86, 89-91 (1994) (not fatal to probable cause finding that affiant did not observe informant enter target apartment to make controlled buy).

In light of the reliability demonstrated by the CI's role in the three prior controlled buys, the specificity of the CI's tip, the named and unnamed citizen reports of drug distribution taking place at apartment 12, and the independent police corroboration of phone numbers, texts, and vehicles, the affidavit sufficiently established the CI's veracity. We thus conclude that the affidavit was sufficient and that the judge properly denied the motion to suppress.

<u>Order denying motions to suppress affirmed</u>.

By the Court (Meade, Blake & Brennan, JJ.[6]),

Clerk

Entered: August 26, 2024.

---

[6] The panelists are listed in order of seniority.

9